## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| ALAIN GIRAUDON, Individually and on Behalf of All Others Similarly Situated, 270 West 17th St. New York, NY 10011 | Case No. |
| | |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| | |
| v. | **JURY TRIAL DEMANDED** |
| | |
| INNOVATIVE INDUSTRIAL PROPERTIES, INC. 1389 Center Drive, Suite 200 Park City, UT 84098 | |
| | |
| ALAN D. GOLD c/o Innovative Industrial Properties, Inc. 1389 Center Drive, Suite 200 Park City, UT 84098 | |
| | |
| PAUL E. SMITHERS c/o Innovative Industrial Properties, Inc. 1389 Center Drive, Suite 200 Park City, UT 84098 | |
| | |
| DAVID SMITH c/o Innovative Industrial Properties, Inc. 1389 Center Drive, Suite 200 Park City, UT 84098 | |
| | |
| – and – | |
| | |
| BEN REGIN c/o Innovative Industrial Properties, Inc. 1389 Center Drive, Suite 200 Park City, UT 84098 | |
| | |
| Defendants. | |

Plaintiff Alain Giraudon ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges

1

the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Innovative Industrial Properties, Inc. ("IIPR", "IIP", or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired IIPR securities between February 27, 2024 and December 19, 2024, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     IIPR is an internally managed real estate investment trust ("REIT") purportedly focused on the acquisition, ownership, and management of specialized properties leased to state-licensed operators for their regulated medical-use cannabis facilities.

3.     As a REIT, IIPR's primary source of income is derived from rental revenue generated by the properties that it acquires. To measure its financial performance, IIPR uses funds from operations ("FFO"), a metric calculated by adding depreciation, amortization, and losses on sales of property to earnings and then subtracting any gains on sales of property and any interest

income.  REITs tend to consider FFO to be a more accurate measure of a REIT's value than net income because it addresses the limitations of traditional accounting methods—particularly regarding depreciation, which can misrepresent the true value of real estate assets—and focuses on the cash flow generated by a REIT's core operations.  As a result, FFO provides investors with a clearer picture of a REIT's ability to generate revenue and pay dividends.

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) IIPR was experiencing significant declines in rent and property-management fees in connection with certain customer leases; (ii) the foregoing would likely impair the Company's ability to maintain FFO and revenue growth; (iii) accordingly, IIPR's leasing operations were less profitable than the Company had represented to investors; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.     On November 6, 2024, IIPR reported its financial results for the third quarter of 2024.  Among other items, IIPR reported normalized FFO per share of $2.02, missing the consensus estimate of $2.03 and declining from $2.09 in the same period in 2023.  IIPR also reported revenue of $76.5 million, missing the consensus estimate of $77.5 million and declining from $77.8 million in the same period in 2023.  IIPR stated that the year-over-year decrease was due to a $3.0 million decline in contractual rent and property management fees in the third quarter related to properties that IIPR regained possession of since June 2023; a decline of $1.3 million due to rent received but not recognized in rental revenues resulting from the re-classifications of two sales-type leases beginning January 1, 2024; and $1.3 million of contractually due rent and property management fees that were not collected during the current quarter.

6.      On this news, IIPR's stock price fell $12.93 per share, or 10.51%, to close at $110.07 per share on November 7, 2024.

7.      Then, on December 20, 2024, IIPR announced that on the previous day, PharmaCann Inc. ("PharmaCann"), the tenant for eleven properties that IIPR owns—and the revenues from which represented 17% of IIPR's total rental revenues for the three and nine months ended September 30, 2024—defaulted on its obligations to pay rent for the month of December under six of its eleven leases (the "Leases"), for properties located in Illinois, Massachusetts, Michigan, New York, Ohio and Pennsylvania.  December rent, including base rent, property management fees, and estimated tax and insurance payments, totaled $4.2 million for these six properties.  Further, IIPR stated that it applied security deposits held by IIPR pursuant to these Leases for the payment in full of the defaulted rent, in addition to late penalties and interest. Finally, the Company revealed that "although PharmaCann paid rent in full under the remaining five Leases totaling $90,000 for the month of December, as a result of cross-default provisions contained in each of the Leases, on December 19, 2024, PharmaCann also defaulted on its obligations under these five Leases, as a result of the non-payment of rent on the other six Leases."

8.      On this news, IIPR's stock price fell $21.68 per share, or 22.73%, to close at $73.66 per share on December 20, 2024.

9.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

12.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  IIPR is incorporated in this Judicial District.  In addition, pursuant to IIPR's most recently filed Quarterly Report with the SEC, as of November 7, 2024, there were 28,331,833 shares of IIPR common stock outstanding.  IIPR's securities trade on the New York Stock Exchange ("NYSE").  Accordingly, there are presumably hundreds, if not thousands, of investors in IIPR securities located within the U.S., some of whom undoubtedly reside in this Judicial District.

13.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.    Plaintiff, as set forth in the attached Certification, acquired IIPR securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant IIPR is a Maryland corporation with principal executive offices located at 1389 Center Drive, Suite 200, Park City, UT 84098.  IIPR's securities trade on the NYSE under the symbol "IIPR."

16.     Defendant Alan D. Gold ("Gold") has served as the Company's Executive Chairman at all relevant times.

17.     Defendant Paul E. Smithers ("Smithers") has served as the Company's Chief Executive Officer at all relevant times.

18.     Defendant David Smith ("Smith") has served as the Company's Chief Financial Officer at all relevant times.

19.     Defendant Ben Regin ("Regin") has served as the Company's Chief Investment Officer at all relevant times.

20.     Defendants Gold, Smithers, Smith, and Regin are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants possessed the power and authority to control the contents of IIPR's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of IIPR's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with IIPR, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

22.     IIPR and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

23.     IIPR is an internally managed REIT purportedly focused on the acquisition, ownership, and management of specialized properties leased to state-licensed operators for their regulated medical-use cannabis facilities.

24.     As a REIT, IIPR's primary source of income is derived from rental revenue generated by the properties that it acquires.  To measure its financial performance, IIPR uses FFO, a metric calculated by adding depreciation, amortization, and losses on sales of property to earnings and then subtracting any gains on sales of property and any interest income.  REITs tend to consider FFO to be a more accurate measure of a REIT's value than net income because it addresses the limitations of traditional accounting methods—particularly regarding depreciation, which can misrepresent the true value of real estate assets—and focuses on the cash flow generated by a REIT's core operations.  As a result, FFO provides investors with a clearer picture of a REIT's ability to generate revenue and pay dividends.

### Materially False and Misleading Statements Issued During the Class Period

25.     The Class Period begins on February 27, 2024, when IIPR filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operational results for the year ended December 31, 2023 (the "2023 10-K").  With respect to the Company's competitive strengths, the 2023 10-K stated, in relevant part:

- ***Recurring Revenue with Contractual Escalations***. As of December 31, 2023, we owned 108 properties. Of these 108 properties, we include 103 properties in our operating portfolio, which were 95.8% leased as of December 31, 2023, with a weighted-average remaining lease term of

approximately 14.6 years, and which are subject to contractual rental rate increases. Along with our existing portfolio, we expect to continue to enter into additional similar transactions structured to provide recurring revenue with contractual escalations.

- **Demonstrated Investment Acumen**. We utilize rigorous underwriting standards for evaluating acquisitions and potential tenants to ensure that they meet our strategic and financial criteria. Our extensive experience and relationships in the real estate and regulated cannabis industry enable us to identify, negotiate and close on acquisitions and leases with established operators and other operators which meet our criteria.

- **Regulated Cannabis Industry Growth Trends**. Based on the strong historical and projected growth for the regulated cannabis industry, we expect to see significant spending by state-licensed cannabis operators on their existing and new state-licensed cannabis facilities, presenting an opportunity for us to be a key capital provider in their expansion initiatives.

26.    Further, with respect to the Company's business objectives and growth strategies,

the 2023 10-K stated, in relevant part:

*Our principal business objective is to maximize stockholder returns through a combination of (1) distributions to our stockholders, and (2) sustainable long-term growth in cash flows from increased rents, which we hope to pass on to stockholders in the form of increased distributions*. Our primary strategy to achieve our business objective is to acquire and own a portfolio of specialized industrial properties, including regulated cannabis facilities leased to tenants holding the requisite state licenses to operate in the regulated cannabis industry.

- **Owning Specialized Industrial Properties and Related Real Estate Assets for Income**. We primarily acquire regulated cannabis facilities from licensed operators who will continue their cultivation, processing and/or dispensing operations after our acquisition of the property. **We expect to hold acquired properties for investment, with the goal of generating stable and increasing rental income from leasing these properties to licensed operators**.

- **Expanding as Additional States Enact Regulated Cannabis Programs**. We acquire properties in the United States, with a focus on states that have established regulated cannabis programs. As of December 31, 2023, we owned properties in 19 states, and we expect that our acquisition opportunities will continue to expand as additional states establish regulated cannabis programs and license new operators.

- ***Providing Expansion Capital to Existing Tenants as an Additional Source of Income***. We have provided expansion capital for many of our existing tenant operators as they expand operations in additional states and locations within a state, as well as capital for continued enhancements of production capacity at existing facilities that these operators lease from us, which correspond to adjustments in rent under the applicable leases and other provisions in certain cases. We expect to continue to focus on executing on these expansion initiatives with our tenant operators.

- ***Preserving Financial Flexibility on our Balance Sheet***. *We are focused on maintaining a flexible capital structure for financing our growth initiatives*. As of December 31, 2023, we had debt comprised of approximately $4.4 million principal amount of Exchangeable Senior Notes and $300.0 million principal amount of our 5.50% Senior Notes due 2026 (the "Notes due 2026"), representing a total quarterly fixed cash interest obligation of approximately $4.1 million and approximately 12% of our total gross assets of approximately $2.6 billion, with no debt maturing until May 2026 (holders exchanged the remaining principal amount of the Exchangeable Senior Notes for a combination of shares of common stock and cash subsequent to year-end).[1]

27.     In addition, in discussing the market opportunity of the regulated cannabis industry, the 2023 10-K stated, in relevant part:

<u>Access to Capital</u>

To date, the status of state-licensed cannabis under federal law has limited the ability of state-licensed industry participants to fully access the U.S. banking system and traditional financing sources. These limitations, when combined with the high costs of maintaining licensed and stringently regulated cannabis facilities, substantially increase the cost of production. ***While future changes in federal and state laws may ultimately open up financing options that have not been widely available to date in this industry, we believe that our sale-leaseback and other real estate solutions to state-licensed industry participants will continue to be attractive capital options for regulated operators***.

28.     Finally, with respect to the Company's approach to risk management, the 2023 10-K stated, in relevant part:

***As of December 31, 2023, we owned 108 properties located in 19 states. Many of our tenants are tenants at multiple properties. We will continue to attempt to diversify the investment size and location of our portfolio of properties***

---

[1] All emphases included herein are added unless otherwise indicated.

*in order to manage our portfolio-level risk*. Over the long term, we expect that no single property will exceed 20% of our total assets and that properties leased to a single tenant (individually or together with its affiliates) will not exceed 20% of our total assets. Notwithstanding the foregoing, the industry continues to experience significant consolidation among regulated cannabis operators, and certain of our tenant operators may combine, increasing the concentration of our tenant portfolio with those consolidated operators.

29.     Appended to the 2023 10-K as an exhibit was a signed certification pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Smithers and Smith, attesting that "[t]he information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the Company."

30.     That same day, IIPR hosted an earnings call with investors and analysts to discuss the Company's Q4 2023 results (the "Q4 2023 Earnings Call"). During the scripted portion of the Q4 2023 Earnings Call, Defendant Gold stated, in relevant part, "[w]e have one of the strongest and most experienced teams of real estate professionals in the cannabis industry, a high-quality portfolio and a conservative and flexible balance sheet with a 12% debt to total gross assets. No variable rate debt, no debt maturities until May 2026."

31.     Also during the scripted portion of the Q4 2023 Earnings Call, Defendant Smithers stated, in relevant part, "[a]s we have noted in the past, and I think it is worth repeating here, we are of course first and foremost focused on maximizing the value of each of our properties and having tenants with strong teams that can manage their businesses successfully through the inevitable ups and downs with the industry."

32.     In addition, during the scripted portion of the Q4 2023 Earnings Call, Defendant Regin stated, in relevant part:

> We also executed a lease amendment with PharmaCann to provide additional construction funding of $16 million for our New York asset as PharmaCann executes on its strategy to expand production capacity after being awarded an adult-use production license late last year. ***We are pleased with the demand we are seeing***

*for our assets across markets and the significant leasing progress we have made in the last year, while also continuing to source attractive new investment opportunities, which we will continue to pursue on a very selective, disciplined basis*.

33.    Finally, during the Q&A portion of the Q4 2023 Earnings Call, when asked to discuss PharmaCann and the Company's other New York tenant partners, Defendant Regin responded, in relevant part:

There's certainly been some historical challenges, but we very much like the position that our tenant partners are in the state. *To your comment about PharmaCann, we do - there's a tremendous amount of value in that asset in particular*.

\*\*\*

*I think it sets PharmaCann up very well to take advantage of the wholesale opportunities that we're going to see*. It's projected to be one of the top markets in the country, perhaps not growing as fast as some had hoped in previous years, but we're really seeing some improvement, seeing the improved sentiment from the [multi-state operators], as you mentioned, people that are very bullish on the state want to get into the market. They recognize the potential there and we're very happy to support our tenant partners on their growth initiatives in that state.

34.    On May 9, 2024, IIPR hosted an earnings call with investors and analysts to discuss the Company's Q1 2024 results (the "Q1 2024 Earnings Call").  During the scripted portion of the Q1 2024 Earnings Call, Defendant Gold stated, in relevant part:

The first four months of 2024 have been very productive for our team with our focus on driving re-leasing activity and monitoring the completion of significant development projects at our properties, along with continued support of our tenants and funding critical infrastructure improvements to both further enhance production capacity and efficiency and activate significant projects under development.

\*\*\*

The company notched another solid quarter in Q1, generating $2.21 in [adjusted FFO ("AFFO")] per share and further enhancing the company's liquidity position in the first four months of the year, with the upsizing of the revolving credit facility from $30 million to $50 million. While AFFO per share was down modestly quarter to quarter, we note that rents for the new leases we executed in late 2023 and year

to date are not expected to commence for some months to come as new tenants need the time to obtain the requisite approvals to operate and transition into these properties in addition to certain pre-leased properties under development where construction needs to be completed.

35.     Also during the scripted portion of the Q1 2024 Earnings Call, Defendant Regin stated, in relevant part:

> Year to date, we've made substantial progress on this front, executing four new leases covering $69 million of invested capital in California and Michigan. California, we've executed new leases for our 19th Avenue and McLane Street properties in Palm Springs with Gold Flora, an existing tenant of ours and a leading vertically integrated operator in California.
>
> And in Michigan, as we noted last quarter, we executed an LOI for our Harvest Park facility prior to the move-out of the former tenant and, earlier this quarter, executed a lease with Lume Cannabis Company, one of the largest operators in the Michigan market. We also signed a lease in January for one of our three small retail vacancies in the state.
>
> We were very pleased with the demand we saw for these assets, the speed at which we executed new leases, and the relatively minimal amount of incremental capital required for re-tenanting. ***We believe our ongoing execution on our leasing initiatives supports our underlying thesis regarding the high-quality, purpose-built, mission-critical nature of our real estate portfolio.***
>
> ***
>
> Regarding new investment activity, in the first four months of 2024, we executed three lease amendments to fund additional improvements at properties totaling $22.1 million, including $16 million for ***PharmaCann in New York, where PharmaCann is focused on expanding production capacity after being awarded an adult-use production license late last year***.

36.     On August 6, 2024, IIPR hosted an earnings call with investors and analysts to discuss the Company's Q2 2024 results (the "Q2 2024 Earnings Call"). During the scripted portion of the Q2 2024 Earnings Call, Defendant Gold stated, in relevant part:

> Q2 was another solid quarter for IIP generating $80 million in total revenues and $2.29 in AFFO per share. That performance enabled us to sequentially increase our Q2 common stock dividend by 4.4% to $1.90, continuing our track record of increasing our dividend every year since our inception in 2016.

We achieved these results without the full impact of the rents for new leases that we executed in late 2023 and year-to-date, in addition to certain pre-leased properties under development where construction needs to be completed.

***

As we have reiterated in the past, we are really pleased with our capital position, especially in light of the macroeconomic environment impacting real estate companies in the cannabis industry. Our total available liquidity exceeded $210 million as of quarter end, including another upsizing capacity under our revolving credit facility in Q2 to $50 million, and fully funds any remaining development commitments we have, along with providing ample dry power for additional strategic investments.

37. The statements referenced in ¶¶ 25-36 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) IIPR was experiencing significant declines in rent and property-management fees in connection with certain customer leases; (ii) the foregoing would likely impair the Company's ability to maintain FFO and revenue growth; (iii) accordingly, IIPR's leasing operations were less profitable than the Company had represented to investors; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

38. In addition, Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required IIPR to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants' failure to disclose that the Company was experiencing significant declines in rent and property-management fees in connection with certain customer leases violated Item 303 because this issue represented a

13

known trend or uncertainty that was likely to have a material unfavorable impact on the Company's business and financial results.

### The Truth Emerges

39.     On November 6, 2024, IIPR issued a press release reporting the Company's financial results for the third quarter of 2024.  The press release stated, in relevant part:

| (Per share) | Three Months Ended September 30, | | | |
| --- | --- | --- | --- | --- |
|  | 2024 | 2023 | $ Change | % Change |
| Net income attributable to common stockholders | $1.37 | $1.45 | ($0.08) | (6%) |
| Normalized FFO | $2.02 | $2.09 | ($0.07) | (3%) |
| AFFO | $2.25 | $2.29 | ($0.04) | (2%) |

\*\*\*

**Financial Results**

***For the three months ended September 30, 2024, IIP generated total revenues of $76.5 million, compared to $77.8 million for the same period in 2023, a decrease of 1.7%. The decrease was primarily due to (i) a $3.0 million decline in contractual rent and property management fees received during the three months ended September 30, 2024 related to properties that IIP regained possession of since June 2023; (ii) a decline of $1.3 million due to rent received but not recognized in rental revenues resulting from the re-classifications of two sales-type leases starting January 1, 2024; and (iii) $1.3 million of contractually due rent and property management fees that were not collected during the three months ended September 30, 2024***. This decline was partially offset by a $4.6 million increase to contractual rent and property management fees, which was primarily driven by contractual rent escalations, amendments to leases for additional improvement allowances at existing properties that resulted in adjustments to rent and new leases entered into since June 2023.

\*\*\*

For the three months ended September 30, 2024, IIP recorded net income attributable to common stockholders of $39.7 million, or $1.37 per share; funds from operations (FFO) of $57.6 million, or $2.02 per share; ***Normalized FFO of $57.8 million, or $2.02 per share***; and AFFO of $64.3 million, or $2.25 per share.

40.     On this news, IIPR's stock price fell $12.93 per share, or 10.51%, to close at $110.07 per share on November 7, 2024.

41.     Then, on December 20, 2024, the Company issued a press release entitled "Innovative Industrial Properties Reports Default by PharmaCann on All Leases."  The press release stated, in relevant part:

> [IIP], through indirect, wholly owned subsidiaries serving as landlords, previously entered into leases (collectively, the Leases) with PharmaCann Inc. and its affiliates (collectively, PharmaCann) as tenants for eleven properties that IIP owns, ***which represented 17% of IIP's total rental revenues for the three and nine months ended September 30, 2024***.
>
> On December 19, 2024, PharmaCann defaulted on its obligations to pay rent for the month of December under six of the eleven Leases, for properties located in Illinois, Massachusetts, Michigan, New York, Ohio and Pennsylvania. December rent, including base rent, property management fees and estimated tax and insurance payments, totaled $4.2 million for these six properties. IIP applied security deposits held by IIP pursuant to these Leases for the payment in full of the defaulted rent, in addition to late penalties and interest.
>
> Although PharmaCann paid rent in full under the remaining five Leases totaling $90,000 for the month of December, as a result of cross-default provisions contained in each of the Leases, on December 19, 2024, PharmaCann also defaulted on its obligations under these five Leases, as a result of the non-payment of rent on the other six Leases.
>
> IIP is continuing discussions with PharmaCann regarding the Leases and expects to enforce its rights under the Leases aggressively, which may include, but is not limited to, commencing eviction proceedings as IIP deems necessary.

42.     On this news, IIPR's stock price fell $21.68 per share, or 22.73%, to close at $73.66 per share on December 20, 2024.

## SCIENTER ALLEGATIONS

43.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in

a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired IIPR securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein; the officers and directors of the Company, at all relevant times; members of their immediate families; and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, IIPR securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by IIPR or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

48.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of IIPR;

- whether the Individual Defendants caused IIPR to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of IIPR securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

50.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- IIPR securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold IIPR securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

51. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

53. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

54. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

55.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of IIPR securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire IIPR securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

56.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for IIPR securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about IIPR's finances and business prospects.

57.     By virtue of their positions at IIPR, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

58.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of IIPR, the Individual Defendants had knowledge of the details of IIPR's internal affairs.

59.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of IIPR. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to IIPR's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of IIPR securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning IIPR's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired IIPR securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

60.    During the Class Period, IIPR securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading

statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of IIPR securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of IIPR securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of IIPR securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

61.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## **COUNT II**

### **(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

63.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64.    During the Class Period, the Individual Defendants participated in the operation and management of IIPR, and conducted and participated, directly and indirectly, in the conduct

of IIPR's business affairs.  Because of their senior positions, they knew the adverse non-public information about IIPR's misstatement of income and expenses and false financial statements.

65.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to IIPR's financial condition and results of operations, and to correct promptly any public statements issued by IIPR which had become materially false or misleading.

66.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which IIPR disseminated in the marketplace during the Class Period concerning IIPR's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause IIPR to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of IIPR within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of IIPR securities.

67.    Each of the Individual Defendants, therefore, acted as a controlling person of IIPR. By reason of their senior management positions and/or being directors of IIPR, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, IIPR to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of IIPR and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

68.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by IIPR.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  January 17, 2025                          Respectfully submitted,

*/s/ Daniel S. Sommers*
Daniel S. Sommers
S. Douglas Bunch
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
1100 New York Avenue N.W.
Suite 800, East Tower
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
dsommers@cohenmilstein.com
dbunch@cohenmilstein.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044

23

jalieberman@pomlaw.com
ahood@pomlaw.com

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, _Alain Giraudon_____, make this declaration

pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private

Securities Litigation Reform Act of 1995.

2.   I have reviewed a Complaint against Innovative Industrial Properties, Inc. ("IIPR"

or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.   I did not purchase or acquire IIPR securities at the direction of plaintiffs' counsel

or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who

purchased or otherwise acquired IIPR securities during the class period, including providing

testimony at deposition and trial, if necessary.  I understand that the Court has the authority to

select the most adequate lead plaintiff in this action.

5.   The attached sheet lists all of my transactions in IIPR securities during the Class

Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is

signed, I have not served or sought to serve as a representative party on behalf of a class under the

federal securities laws.

7.   I agree not to accept any payment for serving as a representative party on behalf of

the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such

reasonable costs and expenses directly relating to the representation of the class as ordered or

approved by the Court.

8.    I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.


**Executed** _____
                        January 2, 2025
                              **(Date)**


DocuSigned by:

*Alain Giraudon*

B99C0210E7974BB...
_____
                              **(Signature)**


Alain Giraudon
_____
                     **(Type or Print Name)**

**Innovative Industrial Properties, Inc. (IIPR)**                                    **Alain Giraudon**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 12/9/2024 | 500 | $108.1700 |
| Purchase/Acquisition | 12/9/2024 | 1,200 | $108.5220 |