**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| ALAIN GIRAUDON, Individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>INNOVATIVE INDUSTRIAL PROPERTIES, INC., ALAN GOLD, PAUL SMITHERS, DAVID SMITH, and BEN REGIN,<br><br>                              Defendants. | Case No. 1:25-cv-00182-GLR<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION BY**
**CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM FOR**
**APPOINTMENT AS LEAD PLAINTIFF AND**
**APPROVAL OF SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT......................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................................... 2

ARGUMENT .................................................................................................................................... 3

    I.     BIRMINGHAM IS THE PRESUMPTIVE LEAD PLAINTIFF AND SHOULD BE APPOINTED LEAD PLAINTIFF........................................................................................... 3

        A.   Birmingham Filed a Timely Motion ................................................................... 4

        B.   Birmingham Has the Largest Financial Interest in the Relief Sought by the Class........ 5

        C.   Birmingham Satisfies Rule 23 ............................................................................ 6

    II.    BIRMINGHAM'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED ..... 7

CONCLUSION................................................................................................................................. 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Harper v. 2U, Inc.*,
  No. CV TDC-19-3455, 2020 WL 13569349 (D. Md. June 1, 2020)........................................7

*Huang v. Acterna Corp.*,
  No. CV DKC 2003-1131, 2004 WL 7397360 (D. Md. Aug. 9, 2004) ....................................6

*Klugmann v. Am. Cap. Ltd.*,
  CIV. No. PJM 09-5, 2009 WL 2499521 (D. Md. Aug. 13, 2009)............................................6

*Ortmann v. Aurinia Pharms. Inc.*,
  No. GJH-22-1335, 2023 WL 2139796 (D. Md. Feb. 20, 2023) ...........................................4, 6

*Shah v. GenVec, Inc.*,
  No. CIV.A. DKC 12-0341, 2012 WL 1478792 (D. Md. Apr. 26, 2012)..................................7

*Tchatchou v. India Globalization Cap., Inc.*,
  No. 8:18-cv-03396-PWG, 2019 WL 1004591 (D. Md. Feb. 28, 2019)................................1, 5

*Walker v. iLearningEngines, Inc.*,
  No. CV DKC 24-2900, 2025 WL 637450 (D. Md. Feb. 27, 2025) .........................................7

**Statutes**

15 U.S.C. §78u-4(a)(1) ...........................................................................................................3

15 U.S.C. §78u-4(a)(3)(A)........................................................................................................4

15 U.S.C. §78u-4(a)(3)(B) ............................................................................................... *passim*

Lead Plaintiff movant City of Birmingham Retirement and Relief System ("Birmingham" or "Movant"), on behalf of itself and all others similarly situated, respectfully submits this Memorandum of Law in support of its Motion to: (1) appoint Birmingham as Lead Plaintiff of the above-captioned securities class action (the "Action"); (2) approve Birmingham's selection of Scott+Scott Attorneys at Law LLP ("Scott+Scott") as Lead Counsel for the putative Class; and (3) grant such other and further relief as the Court may deem just and proper.[1]

## PRELIMINARY STATEMENT

Presently pending before the Court is a securities class action brought on behalf of purchasers of Innovative Industrial Properties, Inc. ("IIPR" or the "Company") securities between February 27, 2024, and December 19, 2024, inclusive (the "Class Period") (collectively, the "Class"). The Action alleges violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5.

The Private Securities Litigation Reform Act of 1995, as amended, 15 U.S.C. §78u-4(a)(3)(B) ("PSLRA"), provides that a court must appoint as lead plaintiff the "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(i); *see, e.g.*, *Tchatchou v. India Globalization Cap., Inc.*, No. 8:18-cv-03396-PWG, 2019 WL 1004591, at *7 (D. Md. Feb. 28, 2019).[2] Birmingham is the most adequate Plaintiff because it timely moved to be Lead Plaintiff, has the largest financial interest in the litigation (approximately $257,792 in recoverable losses), and satisfies the representative requirements set forth in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

---

[1]    Defined terms have the same definitions as in the complaint filed in this Action on January 17, 2025 (the "Complaint"). *Giraudon v. Innovative Indus. Props., Inc.*, No. 1:25-cv-00182, ECF No. 1. Unless otherwise noted, all "¶" and "¶¶" citations refer to the Complaint.

[2]    Unless otherwise indicated, citations are omitted and emphasis is added.

1

For the reasons summarized herein and discussed more fully below, Birmingham's Motion should be approved in its entirety.

## FACTUAL BACKGROUND

On January 17, 2025, Plaintiff Alain Giraudon commenced the Action against IIPR and other related Defendants by filing the Complaint. IIPR is an internally managed real estate investment trust ("REIT") purportedly focused on the acquisition, ownership, and management of specialized properties leased to state-licensed operators for their regulated medical-use cannabis facilities. ¶2. As a REIT, IIPR's primary source of income is derived from rental revenue generated by the properties that it acquires. ¶3. To measure its financial performance, IIPR uses funds from operations ("FFO"), a metric calculated by adding depreciation, amortization, and losses on sales of property to earnings and then subtracting any gains on sales of property and any interest income. *Id.* REITs tend to consider FFO to be a more accurate measure of a REIT's value than net income because it addresses the limitations of traditional accounting methods— particularly regarding depreciation, which can misrepresent the true value of real estate assets— and focuses on the cash flow generated by a REIT's core operations. *Id.* As a result, FFO provides investors with a clearer picture of a REIT's ability to generate revenue and pay dividends.

The Complaint alleges that, throughout the Class Period, Defendants made false and/or misleading statements and/or failed to disclose that: (1) IIPR was experiencing significant declines in rent and property-management fees in connection with certain customer leases; (2) the foregoing would likely impair the Company's ability to maintain FFO and revenue growth; (3) accordingly, IIPR's leasing operations were less profitable than the Company had represented to investors; and (4) as a result, the Company's public statements were materially false and misleading at all relevant times. ¶¶4, 37.

2

The truth began to reach the market on November 6, 2024, when the Company issued a press release reporting the Company's financial results for third quarter 2024. ¶39. Therein, the Company revealed it had generated total revenues of $76.5 million during the quarter, compared to $77.8 million from the same period in 2023, representing a decrease of 1.7%. *Id.* The Company attributed the decline to, among other things, declines in property management fees received, declines in rent received, and declines in rent revenue received but not recognized resulting from the re-classification of certain properties. *Id.*

On this news, IIPR's stock price fell $12.93 per share, or 10.51%, to close at $110.07 per share on November 7, 2024. ¶40.

Then, on December 20, 2024, the Company issued a press release entitled "Innovative Industrial Properties Reports Default by PharmaCann on All Leases." ¶41. Therein, the Company revealed, among other things, PharmaCann, as tenants for eleven of IIPR's properties, and representing 17% of IIPR's total rental revenues, defaulted on its obligations to pay rent for the month of December under six of its eleven leases. *Id.* As a result of cross-default provisions contained in each of the leases, PharmaCann defaulted on its obligations under the other five leases. *Id.*

**ARGUMENT**

**I.     BIRMINGHAM IS THE PRESUMPTIVE LEAD PLAINTIFF AND SHOULD BE APPOINTED LEAD PLAINTIFF**

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1); *Id.* at (a)(3)(B). First, the plaintiff who files the action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff (the "Early Notice").

3

15 U.S.C. §78u-4(a)(3)(A)(i).  Second, within 60 days after publication of the Early Notice, any member of the proposed class may apply to the court to be appointed as lead plaintiff.  15 U.S.C. §78u-4(a)(3)(A)(i)(II)-(B)(iii)(I).

Finally, the Court is required to appoint the "most adequate plaintiff" as lead plaintiff.  15 U.S.C. §78u-4(a)(3)(B)(i).  Under this provision, the Exchange Act provides that the court is to presume the "most adequate plaintiff" to be the class member who: (a) "has either filed [a] complaint or made a motion [for lead plaintiff] in response to a notice"; (b) "has the largest financial interest in the relief sought"; and (c) "otherwise satisfies the requirements of Rule 23." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc); *see also Ortmann v. Aurinia Pharms. Inc.*, No. GJH-22-1335, 2023 WL 2139796, at *2-3 (D. Md. Feb. 20, 2023).  The Rule 23 element of the presumption necessitates only a "'prima facie showing of typicality and adequacy.'"  *Id.* at *3 (quoting *Tchatchou*, 2019 WL 1004591, at *7).  Second, so long as the presumption is not rebutted, the "most adequate plaintiff" shall be appointed the lead plaintiff.  *Id.*  As demonstrated below, Birmingham meets these requirements and should be appointed to serve as Lead Plaintiff.

### A.     Birmingham Filed a Timely Motion

On January 17, 2025, the Action was commenced and a notice of pendency of the Action was published thereafter on *Access Newswire*, a national newswire service.  *See* Declaration of Corey Smith Bott ("Bott Decl.") filed in support hereof, Ex. A.  The requirements of 15 U.S.C. §78u-4(a)(3)(A)(i) have, therefore, been met.  The Early Notice states that those wishing to serve as Lead Plaintiff can move for appointment "until March 18, 2025" (*i.e.*, within 60 days of publication of the Early Notice).  *See Id.*

Birmingham's motion for appointment as Lead Plaintiff is therefore timely filed. Moreover, Birmingham has submitted a certification stating its willingness to serve as a

representative party on behalf of the Class and provides its Class Period transactions.  *See* Bott Decl., Ex. B.

**B.      Birmingham Has the Largest Financial Interest in the Relief Sought by the Class**

To its knowledge, Birmingham is the Lead Plaintiff movant with the largest financial interest in the relief sought by the Class.  Many courts have applied a test to determine financial interest that includes the following factors: "(1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs."  *Tchatchou*, 2019 WL 1004591, at \*4 (citing 7 William B. Rubenstein, Newberg on Class Actions S22:42 (5th ed. 2017).  "The fourth factor is widely considered the most important."  *Id.*

As evidenced by its PSLRA certification and the charts detailing its transactions and losses, Birmingham purchased IIPR securities during the Class Period and suffered losses as a result of Defendants' misconduct.  *See* Bott Decl., Exs. B & C.  Specifically, Birmingham suffered losses of approximately \$257,792.  Bott Decl., Ex. C.  As to the other relevant factors, Birmingham purchased 5,538 total shares of IIPR during the Class Period, had retained 5,191 shares as of the end of the Class Period, and expended approximately \$672,257 on its purchases of IIPR securities during the Class Period.  *Id.*

Birmingham thus has a significant financial interest in this case.  Moreover, Birmingham is unaware of any other movant that has sustained greater financial losses in connection with their IIPR transactions during the Class Period.  Therefore, Birmingham has the "largest financial interest in the relief sought by the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

### C.    Birmingham Satisfies Rule 23

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* at (a)(3)(B)(iii)(I)(cc).  Of the Rule 23 prerequisites, only two − typicality and adequacy − directly address the personal characteristics of the lead plaintiff movant.  Consequently, in deciding a motion to appoint a lead plaintiff, the court need only make findings as to the typicality and adequacy of the proposed lead plaintiff and, at this stage, those findings need only be "prima facie."  *Ortmann*, 2023 WL 2139796, at *2-3.  Birmingham easily makes this prima facie showing.

"The typicality requirement is satisfied 'when the representative plaintiff suffers the same injuries as the class and when the claims are based on the same legal theory.'"  *Id.*, at *3 (quoting *Klugmann v. Am. Cap. Ltd.*, CIV. No. PJM 09-5, 2009 WL 2499521, at *5 (D. Md. Aug. 13, 2009)).  Here, the claims asserted by Birmingham are typical of the claims of the putative Class because, like all other Class members, it: (a) purchased shares of IIPR securities during the Class Period; (b) was adversely affected by Defendants' allegedly false and misleading statements and omissions; and (c) suffered damages as a result thereof.  Since Birmingham's claims are based on the same legal theories and arise from the same event, practice, or course of conduct that gives rise to the claims of other Class members, typicality is satisfied.  *See Ortmann*, 2023 WL 2139796, at *3; *Klugmann*, 2009 WL 2499521, at *5.

"The adequacy requirement is satisfied when (1) the interests of the class representative are not adverse to those of the class, and (2) the parties' attorney is qualified, experienced, and generally able to conduct the proposed litigation."  *Huang v. Acterna Corp.*, No. CV DKC 2003-1131, 2004 WL 7397360, at *4 (D. Md. Aug. 9, 2004); *see also*, *Ortmann*, 2023 WL 2139796, at *3.  Birmingham is "adequate" to serve as Class representative in the instant litigation because its

6

interests are aligned with the interests of the putative Class.  Birmingham, like all other members of the Class, suffered losses as a result of purchasing IIPR securities at prices that were artificially inflated due to Defendants' alleged misstatements.  Birmingham will, therefore, benefit from the same relief as other Class members.  Finally, Birmingham has demonstrated that it is an adequate representative by retaining competent and experienced counsel.  *See Walker v. iLearningEngines, Inc.*, No. CV DKC 24-2900, 2025 WL 637450, at *2-3 (D. Md. Feb. 27, 2025) (considering qualifications of proposed lead counsel in evaluating adequacy); *Shah v. GenVec, Inc.*, No. CIV.A. DKC 12-0341, 2012 WL 1478792, at *2-3 (D. Md. Apr. 26, 2012) (same).  As shown below, Scott+Scott is highly qualified, experienced, and able to conduct this complex litigation in a professional manner.  Accordingly, Birmingham has made a *prima facie* showing that it satisfies all of the requirements of Rule 23 for the purposes of this motion.

## II.    BIRMINGHAM'S SELECTION OF LEAD COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  In making this determination, a court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class[.]"  *Id.* at (a)(3)(B)(iii)(II)(aa).  "[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice."  *Harper v. 2U, Inc.*, No. CV TDC-19-3455, 2020 WL 13569349, at *2 (D. Md. June 1, 2020) (quoting *Cohen v. U.S. Dist. Court for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009)).

Birmingham has selected the law firm of Scott+Scott to represent the Class.  Scott+Scott has substantial experience in the prosecution of securities fraud class actions, possesses the necessary resources to efficiently conduct this litigation, and will vigorously prosecute this case

on behalf of Birmingham and the putative Class.[3]  *See* Bott Decl., Ex. D (Scott+Scott firm résumé). Also, Scott+Scott currently serves as lead or co-lead counsel in numerous securities class actions pending in several U.S. District Courts, including in this Court.[4]  *See also* Bott Decl., Ex. D.  In light of the foregoing, the Court should approve Birmingham's selection of Scott+Scott as Lead Counsel.  The Court can be assured that by approving Birmingham's choice of Lead Counsel, the putative Class will receive the highest caliber of representation.

## CONCLUSION

For all the foregoing reasons, Birmingham respectfully requests that the Court: (1) appoint Birmingham as Lead Plaintiff on behalf of the Class; (2) approve Birmingham's selection of counsel, Scott+Scott, as Lead Counsel; and (3) grant such other and further relief as the Court may deem just and proper.

DATED:  March 18, 2025                             **ABATO, RUBENSTEIN AND ABATO, P.A.**

 */s/ Corey Smith Bott*
Corey Smith Bott (Bar No. 25673)
Shauna Barnaskas (Bar No. 16755)
809 Gleneagles Court, Suite 320
Baltimore, Maryland 21286

---

[3]      Recoveries obtained by Scott+Scott, acting as lead or co-lead counsel, include: *Weston v. RCS Cap. Corp.*, No. 1:14-cv-10136 (S.D.N.Y.) ($31 million); *Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of Am., N.A.*, No. 1:12-cv-02865 (S.D.N.Y.) ($69 million); *Irvine v. ImClone Sys., Inc.*, No. 1:02-cv-00109 (S.D.N.Y.) ($75 million); *Okla. Firefighters Pension & Ret. Sys. v. Newell Brands Inc.,* HUD-L-003492-1 (Sup. Ct. NJ) ($102.5 million); *In re Micro Focus Int'l plc Sec. Litig.*, Lead Case No. 18-cv-01549 (Cal. Super. Ct. San Mateo Cnty.) ($107.5 million); *Okla. Firefighters Pension & Ret. Sys. v. Newell Brands Inc.*, No. L-003492-18 (N.J. Super. Ct. Hudson Cnty.) ($102.5 million); *In re SanDisk LLC Sec. Litig.*, No. 3:15-cv-01455 (N.D. Cal.) ($50 million); *In re Priceline.com Inc. Sec. Litig.*, No. 3:00-cv-01844 (D. Conn.) ($80 million); *Thurber v. Mattel, Inc.*, No. 2:99-cv-10368 (C.D. Cal.) ($122 million); *In re Emulex Corp. Sec. Litig.*, No. 8:01-cv-00219 (C.D. Cal.) ($39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Mo. Cir. Ct., Jackson Cnty.) ($50 million); *In re Nw. Corp. Sec. Litig.*, No. 4:03-cv-04049 (D.S.D.) ($61 million); *Schnall v. Annuity & Life Re (Holdings) Ltd.*, No. 3:02-cv-02133 (D. Conn.) ($27 million); *In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. 2:09-cv-00037 (W.D. Wash.) ($26 million); *In re Conn's, Inc. Sec. Litig.*, No. 4:14-cv-00548 (S.D. Tex.) ($22.5 million); *Abadilla v. Precigen, Inc.*, No. 5:20-cv-06936 (N.D. Cal.) ($13 million settlement).

[4]      *See, e.g.*, Current Lead Counsel Appointments: *White v. Brooge Energy Limited*, No. 2:24-cv-00959 (C. D. Cal.); *Rondini v. Kyverna Therapeutics, Inc.*, No. 3:24-cv-08869 (N.D. Cal.); *Sundaram v. Freshworks, Inc.*, No. 3:22-cv-06750 (N.D. Cal.); *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms. Inc.*, No. 3:21-cv-00762 (S.D. Cal.); *Golubowski v. Robinhood Mkts., Inc.*, No. 3:21-cv-09767 (N.D. Cal.); *Severt v. UiPath, Inc.*, No. 1:23-cv-07908 (S.D.N.Y.); *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, No. 1:23-cv-01769 (S.D.N.Y.); *Marselis v. Fox Factory Holding Corp.*, No. 1:24-cv-00747 (N.D. Ga.).

8

Telephone: (410) 321-0990
csbott@abatolaw.com
sbarnaskas@abatolaw.com

*Local Counsel for Lead Plaintiff Movant City of Birmingham Retirement and Relief System and Proposed Lead Counsel for the Class*

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Thomas L. Laughlin, IV*
Donald A. Broggi*
Nicholas S. Bruno*
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
tlaughlin@scott-scott.com
dbroggi@scott-scott.com
nbruno@scott-scott.com

* *Pro Hac Vice* Application Forthcoming

*Counsel for Lead Plaintiff Movant City of Birmingham Retirement and Relief System and Proposed Lead Counsel for the Class*

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 18, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

<u>*/s/ Corey Smith Bott*</u>

Corey Smith Bott