**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

|  |  |
|---|---|
| ALAIN GIRAUDON, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>INNOVATIVE INDUSTRIAL PROPERTIES, INC., et al.,<br><br>        Defendants. | **CASE No. 1:25-cv-00182-GLR** |

**GENERAL EMPLOYEES OF THE UTILITY BOARD OF THE
CITY OF KEY WEST, FLORIDA'S MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF
<u>LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS</u>**

Movant, Retirement System for the General Employees of the Utility Board of the City of Key West, Florida ("Key West"), by its counsel, respectfully submits this memorandum of law in further support of its motion for its appointment as Lead Plaintiff and approval of its selection of Abraham, Fruchter & Twersky, LLP ("AF&T") as Lead Counsel and The Law Office of Peter T. Nicholl as Local Counsel, and in opposition to the competing motions in this action (the "Action").

**INTRODUCTION**

Four competing motions were filed by putative class members seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The movants are: (1) Key West; (2) City of Birmingham Retirement and Relief System ("Birmingham"); (3) Richard Blocker and Kelly Johnson ("Blocker/Johnson"); and (4) Yolanda Castaneda ("Castaneda"). *See* ECF Nos. 21, 23, 22, and 20, respectively.[1] The movants stated losses are as follows: (1) Key West's loss is $129,046.22; (2) Birmingham's loss is $257,792.79; (3) Richard Blocker's loss is $113,616.82; (4) Kelly Johnson's loss is $70,058.06; and (5) Castaneda's loss is $77,907.25.[2]

Pursuant to the PSLRA, this Court is to appoint the movant who is most capable of adequately representing the interests of the putative class. 15 U.S.C. §78u-4(a)(3)(B)(i). Here, that movant is Key West.

While it is expected that Birmingham will focus almost exclusively on the amount of its loss and claim that it provides Birmingham with the largest financial interest in the relief sought by the class, that amount is not to be considered because Birmingham has already exceeded the

---

[1] On April 1, 2025, movant Castaneda filed a Notice of Non-Opposition to Competing Lead Plaintiff Motions. ECF No. 28.

[2] Blocker's loss includes $745.42 attributed to purchases of preferred shares. All other losses are from purchases of common shares.

number of permitted lead plaintiff appointments within the past three years and is thus in violation of the PSLRA's presumptive bar prohibiting service as lead plaintiff in "more than 5 securities class actions . . . during any 3-year period." *See* 15 U.S.C. §78u-4(a)(3)(B)(vi). In fact, in its certification, Birmingham admits that it is currently serving as lead plaintiff in at least six active securities class actions, having been so appointed during the past 3 years. *See* ECF No. 23-4, ¶6 (listing six lead plaintiff appointments). Accordingly, the PSLRA's statutory language bars Birmingham from serving as lead plaintiff in this Action.

Key West has the largest financial interest of any non-excluded, qualified single movant and is an experienced institutional investor which is committed to achieving the best possible outcome for the class, and accordingly, Key West respectfully requests that the Court appoint it Lead Plaintiff. Neither of the members of the Blocker/Johnson combination has as large a financial interest in this Action as Key West, and their combining of previously unaffiliated individuals as an artificial group cannot overcome Congress' intent that institutions, such as Key West, be appointed as lead plaintiff rather than individuals. *See infra* at 5-7.

In situations like the present one, in which the top two single movants are institutions that each incurred a substantial loss, but one movant has exceeded the number of permissible lead plaintiff appointments, courts have "decline[d] to exercise [their] discretion to permit deviation from the 5-in-3 rule" and instead appointed the institutional investor that has not violated the PSLRA's bar on repeat litigants. *Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653, 662–63 (E.D. Va. 2016) (no reason to exempt movant from the five-in-three provision where another institution is fully qualified to serve as lead plaintiff); *see also Cunha v. Hansen Natural Corp.*, 2009 WL 20209797, at *4-7 (C.D. Cal. July 13, 2009) (court rejects arguments that sub-funds and inactive cases should not count when determining the 5-in-3 year provision).

As such, the Court should deny the competing motions for lead plaintiff and grant Key West's motion.

**ARGUMENT**

The goal of the PSLRA's lead plaintiff provision "is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001). The PSLRA provides that the movant with the largest financial interest in the relief sought by the class is the presumptive most adequate plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii). That presumption is rebuttable and here it is rebutted. Because Birmingham violates the 5-in-3 year provision and neither Blocker nor Johnson by themselves have as large a loss as Key West, the movant before the Court that best satisfies the PSLRA's criteria is Key West. The other motions should be denied.

**A.      Birmingham Is Presumptively Barred From Serving As Lead Plaintiff**

In addition to having a financial interest in the Action, a lead plaintiff movant must also satisfy other criteria. A presumptive lead plaintiff must satisfy the Rule 23 requirements and cannot be subject to the PSLRA's presumptive bar prohibiting service as lead plaintiff in more than five securities class actions during any three-year period. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) and (vi). Here, the statutory bar on the number of lead plaintiff appointments renders Birmingham's financial interest irrelevant for purposes of determining the lead plaintiff. *See Knurr*, 220 F. Supp. 3d at 662–63 (exceeding statutory limit prohibits appointment as lead plaintiff despite having largest financial interest in litigation); *see also Thompson v. The Shaw Group, Inc.*, 2004 WL 2988503, at *6-7 (E.D. La. Dec. 14, 2004) (institution can be disqualified under the statutory bar obviating the relevance of its financial interest). Consequently, regardless of its claimed financial interest, Birmingham cannot serve as lead plaintiff in this case.

One of the purposes of the PSLRA is to protect a class by preventing a representative whose involvement in other securities actions may "mean[] fractured attention and resources" regarding this Action. *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 457 (S.D. Tex. 2002). The PSLRA's presumptive bar recognizes that it is a burden to actively and simultaneously direct more than five complex securities class actions, in addition to the other responsibilities that an institution (or any movant), such as Birmingham, must perform. The 5-in-3 year provision creates a presumption that a plaintiff should not direct more than five securities class actions in three years. *See Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156-57 (N.D. Cal. 1999) (applying presumptive bar to an institutional investor prosecuting six other actions).

While courts have discretion to appoint a movant who exceeds this PSLRA limitation, they are reluctant to do so, particularly when there are other qualified institutional investors with significant losses (such as Key West here) that can serve as lead plaintiff. *See Knurr*, 220 F. Supp. 3d at 662–63 (barring one institution from serving as lead plaintiff because it exceeded the number of appointments allowed by the PSLRA and appointing another institution); *In re Enron*, 206 F.R.D. at 457 & n.33 (disqualifying pension fund that was serving as lead plaintiff in nine cases, four of which were active); *In re Alamosa Holdings, Inc. Sec. Litig.*, 2004 WL 578439, at *1 (N.D. Tex. Mar. 4, 2004) (excluding institutional investor from serving as lead plaintiff that had "served as class representative in five class actions within the last three years and is also seeking to serve in a sixth").

While Birmingham may claim that it is exempt from the PSLRA's bar because Congress favored the appointment of institutions as lead plaintiffs, such argument fails. First, the statutory language does not exclude institutions from the 5-in-3 year limitation. *See In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 822 (N.D. Ohio 1999) (lifting the bar even for institutions would be

inconsistent with PSLRA's purpose); 15 U.S.C. §78u-4(a)(3)(B)(vi) (no institutional investor exemption provided in statute); *see also Struniak v. Lynch*, 159 F. Supp. 3d 643, 657 (E.D. Va. 2016) ("There can be no doubt 'that the plain language of a statute provides the best evidence of legislative intent.'"). Second, here, there is an institution that has not exceeded the presumptive bar (i.e., Key West), which can serve as lead plaintiff and thus meet the congressional objective. While a court can appoint an institution as lead plaintiff even if it exceeds the 5-in-3 year limitation, there is no need to do so here where an otherwise adequate institution can still be appointed as lead plaintiff.

Moreover, Birmingham will be unable to show why the presumptive ban should not be applied to it in this Action. In very limited circumstances have courts exercised their discretion and not applied the presumptive bar, such as when there are no other qualified lead plaintiff movants or only individual investors with small losses were the alternative lead plaintiff. *See*, *e.g.*, *Aronson*, 79 F. Supp. 2d at 1156 (recognizing that bar should not be applied when barred candidate is the "only movant" or "only institutional investor"). Here, where a qualified alternative institution can be appointed as lead plaintiff (i.e., Key West), the presumptive ban of Birmingham should be applied and its motion should be denied.

**B.      The Blocker/Johnson Group Is Not the Presumptive Lead Plaintiff**

Neither of the individual members of the Blocker/Johnson group has as large a loss as Key West and they are not the presumptive lead plaintiff. Courts have declined to aggregate a group's losses for purposes of providing the group with the largest loss in deciding the appointment of lead plaintiff. *See*, *e.g.*, *Lifestyle Invs., LLC v. Amicus Therapeutics, Inc.*, 2016 WL 3032684, at *5-6 (D.N.J. May 26, 2016) (holding that four pension funds "cannot aggregate their losses to serve as lead plaintiff" and appointing investor with largest individual loss as lead plaintiff). Moreover,

even if their losses are combined, the Blocker/Johnson group does not have exceedingly larger losses than Key West. As many courts have found, in such circumstances, the institution is to be appointed as lead plaintiff. *See*, *e.g.*, *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012) ("many courts have demonstrated a clear preference for institutional investors to be appointed as lead plaintiffs…. This preference has been determinative in other cases, even when an institutional investor has a slightly lower loss than another potential lead plaintiff.") (citing *Juliar v. SunOpta Inc.,* 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) ("This difference [of $30,000] is minimal and, in this case, does not overcome a presumption inherent in Congress' enactment of the PSLRA that institutional investors serve as better lead plaintiffs.") (citation omitted); *see also Nakamura v. BRF S.A.*, 2018 WL 3217412, at *2, 4-5 (S.D.N.Y. July 2, 2018) (court appointed an institutional investor as lead plaintiff over a group of individual investors, even though the institution's loss was nearly $130,000 smaller than the group's); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (court held that an institutional investor was "the more adequate and preferable" compared with a grouping of plaintiffs, despite having suffered "slightly lower" losses); *In re Vicuron Pharm., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) ("Under the PSLRA, institutional investors are considered preferred lead plaintiffs.").

Here, Key West has the largest loss of any qualified single movant and is the presumptive lead plaintiff. The members of the Blocker/Johnson group each have less of a loss and those losses should not be combined for purposes of determining the lead plaintiff.

Moreover, the lead plaintiff is to be the one who can best represent the class. Although the two individuals comprising Blocker/Johnson, when artificially combined into a group, have a larger combined loss than Key West, in addition to not being an institution, their filing raises additional questions. For example, there is no explanation as to how their combination occurred,

how they will direct lead counsel, whether they have been involved in complex litigation before, their experience with making legal decisions, their resources to support what could be a lengthy litigation, and how they will resolve disputes between themselves given that they are two individuals with no tie breaker. Key West as lead plaintiff poses none of these potential problems, each of which can be avoided if Key West is appointed lead plaintiff.

C.     **Key West Satisfies the PSLRA's Requirements and Is the Presumptive Lead Plaintiff**

Key West not only suffered a substantial, six-figure loss, it satisfies the Rule 23 requirements, and is not subject to the PSLRA's 5-in-3 year bar. Key West satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.  *See* ECF No. 21-1 at 5-7; ECF No. 21-4 at ¶5 (Key West certification).

Key West meets Rule 23's typicality requirement because its claims arise from the same course of events as the claims of all other class members and involve similar legal arguments to prove the defendant's liability, namely, they arose from Key West's purchase of publicly-traded Innovative common stock during the Class Period when Defendants' alleged material misrepresentations and omissions improperly inflated the price of the securities. Key West purchased a significant number of Innovative shares at inflated prices, and it incurred significant losses when the truth was disclosed. Accordingly, Key West is typical of the class that it seeks to represent.

Likewise, Key West meets Rule 23's adequacy requirement because its interests are clearly aligned with the interests of the other members of the class.  In addition, Key West selected counsel with a demonstrated track record of success in prosecuting securities fraud cases and serving as lead counsel around the country.  *See* ECF No. 21-1 at 7-8; ECF No. 21-6.

Moreover, Key West – as a sophisticated institutional investor – is the preferred lead plaintiff candidate pursuant to the PSLRA. *See In re Cendant Corp. Litig.*, 264 F.3d at 273 ("Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members.").

The only possible argument against Key West's appointment as lead plaintiff is that it does not have as large a loss as other movants. As shown above, the other movants cannot overcome the infirmities in their motions. Key West's motion to be appointed lead plaintiff should be granted.

## CONCLUSION

For the reasons discussed herein and in its Motion (ECF No. 21), Key West respectfully requests that the Court: (i) appoint it as Lead Plaintiff; (ii) approve the selection of AF&T as Lead Counsel and the Law Office of Peter T. Nicholl as Local Counsel for the class; and (iii) grant such other relief as is just and proper.

Dated: April 1, 2025          Respectfully Submitted,

/s/ Scott E. Nevin
Scott E. Nevin , Bar No. 22478
**LAW OFFICE OF PETER T. NICHOLL**
36 South Charles Street, Suite 1700
Baltimore, MD 21201
Telephone: (410) 260-0183
Facsimile: (410) 244-1047
snevin@nicholllaw.com

**Proposed Local Counsel**

**ABRAHAM, FRUCHTER
& TWERSKY, LLP**
Mitchell M.Z. Twersky (*pro hac vice* to be filed)
Atara Twersky (*pro hac vice* to be filed)
Lawrence D. Levit (*pro hac vice* to be filed)
450 Seventh Avenue, 38th Floor

New York, NY 10123
Telephone: (212) 279-5050
Facsimile: (212) 279-3655
mtwersky@aftlaw.com
atwersky@aftlaw.com
llevit@aftlaw.com

**Counsel for Key West and Proposed Lead Counsel**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1, 2025, a true and correct copy of the foregoing General Employees Of The Utility Board Of The City Of Key West, Florida's Memorandum Of Law In Further Support Of Its Motion For Appointment As Lead Plaintiff And Approval Of Its Selection Of Lead Counsel And In Opposition To Competing Motions was served by CM/ECF to the parties registered to the Court's CM/ECF system.

Dated: April 1, 2025                    Respectfully Submitted,


                                        /s/ Scott E. Nevin
                                        Scott E. Nevin