**UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

| | |
|---|---|
| ALAIN GIRAUDON, Individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>   v.<br><br>INNOVATIVE INDUSTRIAL PROPERTIES, INC., ALAN GOLD, PAUL SMITHERS, DAVID SMITH, and BEN REGIN,<br><br>          Defendants. | Case No. 1:25-cv-00182-GLR<br><br><u>CLASS ACTION</u> |

**REPLY IN SUPPORT OF MOTION BY CITY OF BIRMINGHAM RETIREMENT AND
RELIEF SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF
<u>AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT..................................................................................................... 1

ARGUMENT ...................................................................................................................... 2

    I.      THE COMPETING MOVANTS' OPPOSITIONS CONFIRM THAT BIRMINGHAM IS THE PRESUMPTIVE MOST ADEQUATE LEAD PLAINTIFF.........................................................................................................2

    II.     THE COMPETING MOVANTS FAIL TO REBUT THAT BIRMINGHAM IS THE MOST ADEQUATE LEAD PLAINTIFF............................4

          A.     Blocker-Johnson's "Single Purchase" Argument Is Entirely Speculative.............................................................................................6

          B.     Blocker-Johnson's "Relative Loss" Argument Undermines the PSLRA and Is Contrary to Law ...............................................6

          C.     Blocker-Johnson's Standing Arguments Are Irrelevant and Birmingham Has Standing to Bring Preferred Stock Claims In Any Event ......................................................................................8

          D.     Competing Movants' Speculation About Birmingham's Other Lead Plaintiff Appointments Do Not Render It Inadequate ..........................................................................................11

    III.    THE COURT SHOULD REJECT BLOCKER-JOHNSON'S "MORE ADEQUATE" COUNSEL ARGUMENT..................................................... 14

CONCLUSION ..................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alamosa Holdings, Inc. Sec. Litig.*,
No. 5:03-CV-289-C, 2004 WL 578439 (N.D. Tex. Mar. 4, 2004)...........................................12

*Aronson v. McKesson HBOC, Inc.*,
79 F. Supp. 2d 1146 (N.D. Cal. 1999) .................................................................................12

*In re Boeing Co. Aircraft Sec. Litig.*,
No. 19 CV 2394, 2019 WL 6052399 (N.D. Ill. Nov. 15, 2019)...............................................12

*Borenstein v. Finova Group Inc.*,
No. Civ. 00-1010PHXEHC, 2000 WL 34524743 (D. Ariz. Aug. 30, 2000)..............................9

*Burke v. Ruttenberg*,
102 F. Supp. 2d 1280 (N.D. Ala. 2000) ...............................................................................7, 8

*In re Cendant Corp. Litig.*,
60 F. Supp. 2d 354 (D.N.J. 1999) .........................................................................................11

*City of Marysville Gen. Emps. Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*,
No. CV 09-659-EJL-CWD, 2010 WL 2000040 (D. Idaho May 19, 2010) ..............................12

*In re Cloudera, Inc. Sec. Litig.*,
No. 19-CV-03221, 2019 WL 6842021 (N.D. Cal. Dec. 16, 2019)...........................................7

*In re Cree, Inc., Sec. Litig.*,
219 F.R.D. 369 (M.D.N.C. 2003) ......................................................................................11, 14

*In re DaimlerChrysler AG Sec. Litig.*,
216 F.R.D. 291 (D. Del. 2003) .............................................................................................12

*Dhatt v. Enviva, Inc.*,
CV No. MJM-23-2474, 2024 WL 580671 (D. Md. Feb. 13, 2024) .........................................5

*In re E.Spire Commc'ns, Inc., Sec. Litig.*,
231 F.R.D. 207 (D. Md. 2000)................................................................................................9

*In re Extreme Networks Inc. Sec. Litig.*,
No. 15-CV-04883-BLF, 2016 WL 3519283 (N.D. Cal. June 28, 2016) .................................12

*In re Fannie Mae Sec. Litig.*,
355 F. Supp. 2d 261 (D.D.C. 2005) ......................................................................................12

*Fox v. Ritz-Carlton Hotel Co.*,
 977 F.3d 1039 (11th Cir. 2020) ..............................................................................10

*Grad v. Ironnet, Inc.*,
 No. 1:22-cv-00449, 2022 WL 2789899 (E.D. Va. July 15, 2022)..............................................5

*In re HealthSouth Corp. Sec. Litig.*,
 261 F.R.D. 616 (N.D. Ala. 2009)...............................................................................8

*Hevesi v. Citigroup Inc.*,
 366 F.3d 70 (2d Cir. 2004)......................................................................................8

*Homyk v. ChemoCentryx, Inc.*,
 No. 21-CV-03343-JST, 2022 WL 20299962 (N.D. Cal. Jan. 28, 2022) ................................12

*In re Jan. 2021 Short Squeeze Trading Litig.*,
 No. 21-2989-MDL, 2021 WL 4840857 (S.D. Fla. Oct. 15, 2021) ............................................8

*Jastram v. Nextera Energy, Inc.*,
 No. 23-80833-CIV, 2023 WL 11885983 (S.D. Fla. Oct. 26, 2023) ..........................................4

*Jien v. Perdue Farms, Inc.*,
 No. 1:19-CV-2521-SAG, 2022 WL 2818950 (D. Md. July 19, 2022) ....................................10

*Kanefsky v. Honeywell International Inc.*,
 No. 18-cv-15536, 2020 WL 2520669 (D.N.J. May 18, 2020)....................................................6

*Klugmann v. Am. Cap. Ltd.*,
 Civ. No. PJM 09-5, 2009 WL 2499521 (D. Md. Aug. 13, 2009).........................................3, 4

*Knurr v. Orbital ATK, Inc.*,
 220 F. Supp. 3d 653 (E.D. Va. 2016) .............................................................................12, 13

*Laborers Local 1298 Pension Fund v. Campbell Soup Co.*,
 No. CIV. A. 00-152, 2000 WL 486956 (D.N.J. Apr. 24, 2000) ...............................................7

*Long v. Stellantis N.V.*,
 No. 24 Civ. 6196, 2024 WL 5247284 (S.D.N.Y. Dec. 30, 2024)............................................11

*Lundy v. Ideanomics, Inc.*,
 No. 20 CIV. 4944, 2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020)............................................6

*Metague v. Woodbolt Distrib., LLC*,
 No. 8:20-cv-02186-PX, 2021 WL 2457153 (D. Md. June 16, 2021).....................................10

*In re Mut. Funds Inv. Litig.*,
 519 F. Supp. 2d 580 (D. Md. 2007)...............................................................................10

iii

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3d 145 (2d Cir. 2012)...................................................................................10

*Ollila v. Babcock & Wilcox Enters., Inc.*,
   253 F. Supp. 3d 827 (W.D.N.C. 2017) ...................................................................13

*Ortmann v. Aurinia Pharms. Inc.*,
   No. GJH-22-1335, 2023 WL 2139796 (D. Md. Feb. 20, 2023) .................................5

*Palm Tran, Inc. – Amalgamated Transit Union Local 1577 Pension Plan v.
   Emergent Biosolutions Inc.*,
   No. PWG-21-1189, 2021 WL 6072812 (D. Md. Dec. 23, 2021) ..........................4, 5

*Parot v. Clarivate Plc*,
   No. 22-cv-1371 (ARR), 2022 WL 1568735 (E.D.N.Y. May 18, 2022) ....................4

*Patel v. Coinbase Glob., Inc.*,
   CV No. 22-4915, 2022 WL 17582549 (D.N.J. Dec. 12, 2022) .................................7

*Pelletier v. Endo International PLC*,
   No. 17-cv-5114, 2021 WL 398495 (E.D. Pa. Feb. 4, 2021) .....................................9

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015)......................................................................6

*In re PMA Cap. Corp. Sec. Litig.*,
   No. 03-6121, 2005 WL 1806503 (E.D. Pa. July 27, 2005) ......................................9

*Rasella v. Musk*,
   342 F.R.D. 74 (S.D.N.Y. 2022) .........................................................................12, 14

*Ret. Sys. v. ICG, Inc.*,
   No. CV 2:07-0226, 2007 WL 9718299 (S.D.W. Va. July 18, 2007)....................8, 9

*In re Schering-Plough Corp./ENHANCE Sec. Litig.*,
   No. CV 8–397, 2012 WL 4482032 (D.N.J. Sept. 25, 2012)...................................10

*Singh v. Lenovo (U.S.) Inc.*,
   510 F. Supp. 3d 310 (D. Md. 2021).......................................................................10

*Smith v. Suprema Specialties, Inc.*,
   206 F. Supp. 2d 627 (D.N.J. 2002) ........................................................................11

*Tchatchou v. India Globalization Cap., Inc.*,
   No. 8:18-CV-03396-PWG, 2019 WL 1004591 (D. Md. Feb. 28, 2019)...........2, 4, 5

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007)................................................................................................3

*In re Under Armour Sec. Litig.*,
    631 F. Supp. 3d 285 (D. Md. 2022) ...................................................................................3

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    225 F.R.D. 508 (E.D. Pa. 2004) ...................................................................................12

**Statutes and Other Authorities**

Securities Exchange Act of 1934
    Section 10, 15 U.S.C. §78j ...........................................................................................10
    Section 20, 15 U.S.C. §78t ...........................................................................................10

15 U.S.C. § 78u–4 ................................................................................................ *passim*

H.R. Conf. Rep. No. 104-369 (1995), 1995 U.S.C.C.A.N. 730 ....................................13

S. Rep. 104-98 (1995), 1995 U.S.C.C.A.N. 679 ............................................................3

## SUMMARY OF ARGUMENT

In this securities class action against Innovative Industrial Properties, Inc. ("IIPR"), there are three competing Lead Plaintiff appointment motions.  Under the Private Securities Litigation Reform Act ("PSLRA"), the presumptive lead plaintiff is the movant with the largest financial interest who also satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). Competing movants can displace the presumptive lead plaintiff only by an exacting evidentiary showing that the presumptive lead is inadequate to represent the class; allegations and speculation of inadequacy don't cut it.  Here, the presumptive Lead Plaintiff is City of Birmingham Retirement and Relief System ("Birmingham").   Competing movants Richard A. Blocker and Kelly R. Johnson ("Blocker-Johnson") and the Retirement System for the General Employees of the Utility Board of the City of Key West, Florida ("Key West," and, together with Blocker-Johnson, the "Competing Movants") do not dispute that Birmingham has the largest financial interest ($257,792.79 loss) in IIPR securities during the Class Period, while Blocker-Johnson lost $183,674.88 and Key West lost $129,046.22.  Nor do the Competing Movants seriously dispute that Birmingham is both typical and adequate, satisfying Rule 23.[1]

With Birmingham as the presumptive Lead Plaintiff, the Competing Movants are forced to cobble together legally and factually infirm attacks on Birmingham's adequacy.  None of these arguments satisfy the exacting requirements of the PSLRA for an evidentiary showing of inadequacy.  Blocker-Johnson harps on the fact that Birmingham did not purchase IIPR preferred stock.  But the law is clear that a lead plaintiff need not have standing to bring all claims that might be asserted on behalf of the class and, in all events, Birmingham has standing to assert preferred

---

[1]     "Blocker-Johnson Br." refers to the brief filed by Blocker-Johnson on April 1, 2025 at ECF No. 30. "Key West Br." refers to the brief filed by Key West on April 1, 2025 at ECF No. 31.  Unless otherwise specified, all emphasis is added and all internal quotation marks and citations are omitted.

stockholders' claims.  Blocker-Johnson also attacks Birmingham's current service as lead plaintiff in other actions without telling the Court that in four of those, Birmingham is represented by Blocker-Johnson's counsel in this action.  Key West, too, homes in on Birmingham's other appointments, arguing that the PSLRA's professional plaintiff (or "5-in-3") rule disqualifies Birmingham.  But that rule does not apply to institutional plaintiffs such as Birmingham, and even if it did, Birmingham—which manages $1 billion on behalf of 7,000 employees and retirees—has submitted evidence demonstrating that it has the resources and ability to amply represent the class.

Competing Movants' arguments—that they purchased preferred shares in multiple transactions, that they have less ongoing litigation, or that they supposedly have better counsel—distill down to nothing more than the unremarkable assertion that they believe they are *more* adequate than Birmingham to serve as Lead Plaintiff.  But as a matter of law, this is insufficient to render Birmingham *in*adequate and therefore rebut the PSLRA's presumption that Birmingham should be Lead Plaintiff.  *See, e.g*, *Tchatchou v. India Globalization Cap., Inc.*, No. 8:18-CV-03396-PWG, 2019 WL 1004591, at *8 (D. Md. Feb. 28, 2019) ("once the presumption is triggered, the question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff").  Accordingly, the Court should deny the motions of the Competing Movants, appoint Birmingham as Lead Plaintiff, and approve its chosen counsel, Scott+Scott Attorneys at Law LLP ("Scott+Scott"), as Lead Counsel.

## **ARGUMENT**

### I.   THE COMPETING MOVANTS' OPPOSITIONS CONFIRM THAT BIRMINGHAM IS THE PRESUMPTIVE MOST ADEQUATE LEAD PLAINTIFF

Nothing in the Competing Movants' briefs upsets that Birmingham is the presumptive Lead Plaintiff under the PSLRA, given that it (i) indisputably has the largest financial interest; and (ii) is adequate and typical under Rule 23.  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

2

It is undisputed that Birmingham has a significantly larger financial interest than any other movant. *See* ECF Nos. 23-1 & 29; Blocker-Johnson Br. at 1 (conceding that "Birmingham claims a larger absolute loss"); Key West Br. at 1 (not disputing that Birmingham has "largest financial interest in the relief sought by the class").

| Movant | Loss |
|---|---|
| Birmingham | $257,792.79 |
| Blocker-Johnson | $183,674.88 |
| Key West | $129,046.22 |

*See* ECF No. 21-5, 22-5, 23-5.

Neither of the Competing Movants seriously dispute that Birmingham is typical and adequate under Rule 23. The most Competing Movants can muster is that they believe themselves *more* adequate than Birmingham. But, as explained below in Section II, that is legally irrelevant and factually incorrect. The Competing Movants' concession is unsurprising, given that Birmingham comfortably satisfies the Rule 23 requirements of typicality and adequacy. Birmingham manages $1 billion of assets for the benefit of 7,000 employees and retirees. Indeed, Birmingham is exactly the type of lead plaintiff that Congress envisioned when it passed the PSLRA: a sophisticated institutional investor with a significant financial interest in the litigation.[2] Birmingham's Lead Counsel has recovered billions of dollars—including hundreds of millions for defrauded investors—and serves as lead counsel in numerous PSLRA actions across the nation.

"The typicality requirement is satisfied when the representative plaintiff suffers the same injuries as the class and when the claims are based on the same legal theory." *Klugmann v. Am.*

---

[2]    *See* S. Rep. 104-98, at 11 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 690 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts"); *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007) (PSLRA "aimed to increase the likelihood that institutional investors . . . would serve as lead plaintiffs"); *In re Under Armour Sec. Litig.*, 631 F. Supp. 3d 285, 308 (D. Md. 2022) ("institutional investors" are "precisely the type of litigant Congress intended to serve as class representative in securities cases").

*Cap. Ltd.*, Civ. No. PJM 09-5, 2009 WL 2499521, at *5 (D. Md. Aug. 13, 2009). Birmingham's claims are "identical to those of other class members." *Id.* Birmingham "and the rest of the class purchased [IIPR] securities and suffered damages as a result of Defendants' alleged misrepresentations and omissions." *Id.*[3] "The adequacy requirement is met if the purported class representative and its attorney are capable of pursuing the litigation and . . . neither has a conflict of interest with other class members." *Klugmann*, 2009 WL 2499521, at *5. The Competing Movants do not suggest that Birmingham or its counsel are incapable of prosecuting this action. Indeed, "[b]ecause of the large financial losses suffered by its own members," Birmingham "has a significant interest in successfully prosecuting this action." *Id.* Nor do Competing Movants proffer any "evidence of any antagonism or conflict between [Birmingham] and other class members." *Id.*

Accordingly, Birmingham is entitled to the presumption in favor of its appointment as Lead Plaintiff under the PSLRA. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc); *Palm Tran, Inc. – Amalgamated Transit Union Local 1577 Pension Plan v. Emergent Biosolutions Inc.*, No. PWG-21-1189, 2021 WL 6072812, at *5 (D. Md. Dec. 23, 2021); *Tchatchou*, 2019 WL 1004591, at *9.

## II.     THE COMPETING MOVANTS FAIL TO REBUT THAT BIRMINGHAM IS THE MOST ADEQUATE LEAD PLAINTIFF

It is well settled that to rebut the statutory lead plaintiff presumption, competing movants must come forward with "***proof***" "that the presumptively most adequate plaintiff": (1) "will not

---

[3]     That Birmingham did not purchase IIPR preferred stock does not render it atypical. *See Jastram v. Nextera Energy, Inc.*, No. 23-80833-CIV, 2023 WL 11885983, at *4 (S.D. Fla. Oct. 26, 2023) ("In a class made up almost entirely of common stockholders, the claims raised by . . . a common stockholder . . . are typical of the claims or defenses of the class, and are of the same essential characteristics as the claims of the class at large."); *Parot v. Clarivate Plc*, No. 22-cv-1371 (ARR), 2022 WL 1568735, at *6 (E.D.N.Y. May 18, 2022) (lead plaintiff, represented by Blocker-Johnson's counsel, typical despite not having purchased preferred shares "because the losses it suffered are of the same kind, and arise out of the same wrongful acts, as those suffered by other class members").

fairly and adequately protect the interests of the class"; or (2) "is subject to unique defenses that render [it] incapable of adequately representing the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *see Dhatt v. Enviva, Inc.*, CV No. MJM-23-2474, 2024 WL 580671, at *3 (D. Md. Feb. 13, 2024) (competing movant must provide "***exacting proof***" "to rebut the presumption"; collecting decisions applying that standard).  "To demonstrate that the lead plaintiff will be inadequate, courts require a showing of specific support in evidence of the existence of an actual or potential conflict of interest."  *Ortmann v. Aurinia Pharms. Inc.*, No. GJH-22-1335, 2023 WL 2139796, at *4 (D. Md. Feb. 20, 2023).  Crucially, mere "allegations" of inadequacy are "not enough."  *Id.*; *see Grad v. Ironnet, Inc.*, No. 1:22-cv-00449, 2022 WL 2789899, at *6 (E.D. Va. July 15, 2022) ("Without such hard 'proof' required by the PSLRA," court "will not discount the high burden of proof that challengers must overcome to successfully rebut the lead plaintiff presumption.").

Moreover, "once the presumption is triggered, the question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job."  *Tchatchou*, 2019 WL 1004591, at *8 (emphasis in original); *see Palm Tran*, 2021 WL 6072812, at *6 (rejecting evidence that merely sought to "compare and contrast the relative merits of the two competing movants").

The Competing Movants do not meet the stringent PSLRA standard to rebut the presumption that Birmingham is the "most adequate lead plaintiff."  Competing Movants offer only speculation and innuendo purportedly attacking Birmingham's adequacy and do not provide the exacting evidence required to upset the presumption.  Rather, Competing Movants' arguments merely boil down to the makeweight proposition that they think they are ***more*** adequate than Birmingham.  But as *Tchatchou* and *Palm Tran* hold, this is not sufficient under the PSLRA.

**A.      Blocker-Johnson's "Single Purchase" Argument Is Entirely Speculative**

Blocker-Johnson argues that they are more adequate than Birmingham because they "made several purchases of IIPR stock throughout the Class Period, as opposed to Birmingham which made a single purchase on one day during the Class Period" and that "if the Court were to appoint Birmingham . . . and the Class Period's contours were changed at any point down the road, the class would be at risk of losing its standing to pursue its claims." Blocker-Johnson Br. at 2. This is nonsense. Blocker-Johnson's unvarnished speculation about what the Court might hypothetically do in the future does not resemble the exacting evidentiary proof required by the PSLRA. Moreover, the putative Class Period is February 27, 2024 through December 19, 2024, and Birmingham purchased in the middle of that period, on August 21, 2024. Blocker-Johnson points to no evidence as to *why* the Class Period would be altered to exclude August 21.[4] Indeed, if Blocker-Johnson considered the current Class Period inappropriate, it was free to file its own complaint before the Lead Plaintiff deadline pleading a revised Class Period.[5]

**B.      Blocker-Johnson's "Relative Loss" Argument Undermines the PSLRA and Is Contrary to Law**

Next, Blocker-Johnson argues that they are more adequate than Birmingham because, despite admitting that Birmingham suffered a larger loss in IIPR shares than them, their "losses represent a relative loss (compared to the total value of all of their assets) orders of magnitude

---

[4]      Thus, *Kanefsky v. Honeywell International Inc.*, No. 18-cv-15536, 2020 WL 2520669, at *3 n.4 (D.N.J. May 18, 2020), Blocker-Johnson Br. at 2, is of no help to Blocker-Johnson, as that decision involved a plaintiff—unlike Birmingham—who purchased after a partial corrective disclosure. Unlike in *Kanefsky*, Blocker-Johnson lacks evidence raising doubt about the inclusion of August 21, 2024 in the Class Period.

[5]      If any Movant has purchase-date problems, it is Key West, which purchased its shares after the first partial disclosure on November 6, 2024. *See* ECF No. 21-5; ECF No. 1 ¶¶5, 39; *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015) (purchases after the first partial disclosure may "raise serious questions" about a movant's "reliance on the alleged misrepresentations and omissions"); *Lundy v. Ideanomics, Inc.*, No. 20 CIV. 4944, 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020) (plaintiff "may be subject to a unique defense" where it "purchased *all* . . . class period shares after" "partial corrective disclosures") (emphasis in original).

larger than Birmingham's." Blocker-Johnson Br. at 3. As an initial matter, although resting their argument on their relative losses, Blocker-Johnson does not actually submit evidence of the "total value of all of their assets," so as to permit the Court to make the relative loss comparison that they urge. This argument should be rejected out of hand on this alone.

More fundamentally, this argument would turn the PSLRA on its head, because it "would result in individual investors nearly always having the largest financial stake relative to institutional investors whose holdings frequently amount to hundreds of millions of dollars." *In re Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221, 2019 WL 6842021, at *4 (N.D. Cal. Dec. 16, 2019). "[W]here, as here, individuals are pitted against a large institutional investor in a bid to be appointed lead plaintiff, the sizeable difference in their total assets generates a measure of relative loss that would favor almost any individual shareholder other than Warren Buffett. Thus, in cases like this one, evaluating the movants' financial interests based on relative loss would frustrate Congress's preference that institutional investors serve as lead plaintiffs in securities class actions." *Patel v. Coinbase Glob., Inc.*, CV No. 22-4915, 2022 WL 17582549, at *3 (D.N.J. Dec. 12, 2022).

Blocker-Johnson relies on two out-of-Circuit decisions, Blocker-Johnson Br. at 4, but neither is persuasive. *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. CIV. A. 00-152, 2000 WL 486956, at *2 n.5 (D.N.J. Apr. 24, 2000), itself admits that "no case has specifically interpreted the phrase 'largest financial interest' in relative rather than absolute terms" and its approach has been rejected by subsequent courts in its District, *see Patel*, 2022 WL 17582549, at *3 (following "the more commonly accepted, post-*Campbell Soup* practice of calculating the 'largest financial interest' in terms of absolute dollar loss"). Similarly, *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280 (N.D. Ala. 2000), is entirely distinguishable. The institutional investor with the

7

greatest loss in that case profited from its early class period trades and thus had less incentive to pursue claims as to that early timeframe. *Id.* at 1290-93, 1342. In addition, the individual investor for whom the court employed the relative-loss approach submitted a financial disclosure statement and declaration showing that his losses were more than his entire net worth—Blocker-Johnson has neither contended as much, nor submitted any comparable evidence. *Id.* at 1342.

> **C.      Blocker-Johnson's Standing Arguments Are Irrelevant and Birmingham Has Standing to Bring Preferred Stock Claims In Any Event**

Blocker-Johnson also argues that they are more adequate than Birmingham because Birmingham did not purchase IIPR preferred shares, and that by appointing them, "the Court can insulate the class at the outset from issues that may arise later in this litigation." Blocker-Johnson Br. at 3. But the mere speculation that Birmingham may theoretically in the future be found to lack standing to bring claims on behalf of IIPR preferred stock purchasers and that Blocker-Johnson purchased preferred shares are not enough to undermine Birmingham's status as the presumptive Lead Plaintiff. "Courts routinely reject motions of other movants seeking to be appointed co-lead plaintiff simply because they have standing to assert an additional claim." *City of Ann Arbor Emps.' Ret. Sys. v. ICG, Inc.*, No. CV 2:07-0226, 2007 WL 9718299, at *3 (S.D.W. Va. July 18, 2007). As the Second Circuit has explained, "because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004); *see also In re Jan. 2021 Short Squeeze Trading Litig.*, No. 21-2989-MDL, 2021 WL 4840857, at *5 (S.D. Fla. Oct. 15, 2021) ("PSLRA lead plaintiffs commonly do not have standing to sue on every claim"); *In re HealthSouth Corp. Sec. Litig.*, 261 F.R.D. 616, 648 (N.D. Ala. 2009) ("Inevitably, in cases where a lead plaintiff has been selected under the requirements of the PSLRA, a lead plaintiff may not

8

have standing to sue on every available claim."); *In re PMA Cap. Corp. Sec. Litig.*, No. 03-6121, 2005 WL 1806503, at *18 (E.D. Pa. July 27, 2005) ("The PSLRA does not require that the lead Plaintiffs have standing to sue on every available cause of action.").  At this Lead Plaintiff stage, however, "the issue is whether [Birmingham] is an atypical or inadequate plaintiff."  *ICG*, 2007 WL 9718299, at *3 n.2.

Tellingly, Blocker-Johnson does not identify any decision holding a lead plaintiff inadequate where it lacked standing to bring a particular claim.  In *Borenstein v. Finova Group Inc.*, No. Civ. 00-1010PHXEHC, 2000 WL 34524743, at *8 (D. Ariz. Aug. 30, 2000), Blocker-Johnson Br. at 2-3, the court declined to appoint a group of two individual investors who purchased only stock because they "consistently objected to being burdened with the claims of the note purchasers, . . . have openly questioned whether the note holders will be able to recover anything," and "do not believe that the note claims have any place in th[e] litigation.  *Borenstein*, 2000 WL 34524743, at *8.  Unlike the individual investors in *Borenstein*, Birmingham has taken no action remotely antagonistic to preferred shareholder claims.

Nor can Blocker-Johnson find refuge in the assertion that they are a "diverse group of investors" because they purchased preferred shares and thus can "best protect the putative class throughout the litigation."  Blocker-Johnson Br. at 1.  As one court explained, "[t]aken to their logical extreme, arguments of this sort, if accepted by a court, would essentially result in determinations that groups should always be preferred over a single investor, even where the single investors had a larger financial interest in the litigation than the group."  *In re E.Spire Commc'ns, Inc., Sec. Litig.*, 231 F.R.D. 207, 214 (D. Md. 2000).  Indeed, at its core, this is nothing but a repackaged attempt to argue that Blocker-Johnson is *more* adequate than Birmingham, and thus should be rejected.  *Pelletier v. Endo International PLC*, No. 17-cv-5114, 2021 WL 398495, at *1

9

(E.D. Pa. Feb. 4, 2021), Blocker-Johnson Br. at 1-2, is far afield.  There, the court removed a lead plaintiff after years of litigation because plaintiff and its counsel repeatedly lied to the court about when the plaintiff purchased its shares and violated discovery orders to avoid producing documents evidencing the purchase.  If the possibility of subterfuge by investors and counsel was dispositive, no singular lead plaintiff would ever be appointed.

In all events, Birmingham has standing to bring claims under Sections 10(b) and 20(a) of the Exchange Act on behalf of purchasers of IIPR preferred stock during the Class Period.  In the class action context, a plaintiff has standing to bring a claim on behalf of the class where "(1) she has suffered an injury in fact traceable to a defendant and redressable by the court, ***and*** (2) her claimed injury is shared in common with others who have been similarly harmed by the same defendant's actions."  *In re Mut. Funds Inv. Litig.*, 519 F. Supp. 2d 580, 586 (D. Md. 2007) (emphasis in original); *see Jien v. Perdue Farms, Inc.*, No. 1:19-CV-2521-SAG, 2022 WL 2818950, at *3 (D. Md. July 19, 2022); *Singh v. Lenovo (U.S.) Inc.*, 510 F. Supp. 3d 310, 319 (D. Md. 2021); *Metague v. Woodbolt Distrib., LLC*, No. 8:20-cv-02186-PX, 2021 WL 2457153, at *6 (D. Md. June 16, 2021) (all same).[6]  Here, the gravamen of the allegations are the same whether a class member purchased common stock or preferred stock:  "that is, Lead Plaintiffs need to prove, *inter alia*, that Defendants made material misstatements and/or omissions" and that the revelation of the truth about those subjects injured them.  *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, No. CV 8–397, 2012 WL 4482032, at *10 (D.N.J. Sept. 25, 2012) (common stockholders had

---

[6]    *See also Fox v. Ritz-Carlton Hotel Co.*, 977 F.3d 1039, 1046 (11th Cir. 2020) ("class representative must . . . be part of the class and possess the same interest and suffer the same injury as the class members."); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) ("[A] plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual [] injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.").

standing to bring preferred stockholders' claims); *see In re Cendant Corp. Litig.*, 60 F. Supp. 2d 354, 376 (D.N.J. 1999) ("Lead Plaintiffs may represent purchasers of securities other than common stock because the claims of those purchasers arise from the same alleged fraud as the claims of the common stock purchasers."). Thus, Birmingham has standing to bring claims on behalf of Class Members who purchased IIPR preferred shares.

### D. Competing Movants' Speculation About Birmingham's Other Lead Plaintiff Appointments Do Not Render It Inadequate

Both Competing Movants attempt to unseat Birmingham as presumptive Lead Plaintiff based on Birmingham's serving as lead plaintiff in other securities class actions. The Court should reject these arguments because they are speculative and legally infirm.

Key West attempts to rebut Birmingham's presumption by relying on the PSLRA's so-called "5-in-3" rule to argue that it is a "qualified alternative institution" to Birmingham. Key West Brief, at 5; *see* § 78u-4(a)(3)(B)(vi).[7] *First*, "[t]he majority of courts that have considered this issue" have determined that the 5-in-3 rule does "not apply to institutional investors," such as Birmingham, *Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 641 (D.N.J. 2002), because "to disqualify an institutional investor because it exceeded the 5-in-3 cap 'would contravene the very purpose for which the professional plaintiff bar was enacted'—and, ergo, the statutory text, which expressly incorporates that purpose," *Long v. Stellantis N.V.*, No. 24 Civ. 6196, 2024 WL 5247284, at *5 (S.D.N.Y. Dec. 30, 2024) (internal quotation marks omitted); *see In re Cree, Inc., Sec. Litig.*, 219 F.R.D. 369, 372 (M.D.N.C. 2003) ("courts have excepted institutional investors

---

[7] Key West describes the 5-in-3 rule as the "PSLRA's **presumptive** bar prohibiting serve as lead plaintiff in more than five securities class actions during any three-year period." Key West Br. at 3. This is wrong. Unlike the selection of the presumptive lead plaintiff, the 5-in-3 rule is entirely discretionary. *Compare* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I) ("the court shall adopt a presumption that the most adequate plaintiff . . ."), *with* § 78u–4(a)(3)(B)(vi) ("Except as the court may otherwise permit, consistent with the purposes of this section . . .").

from this restriction based on the legislative history of the PSLRA"); *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 264 (D.D.C. 2005) (institutional investor "not the type of 'professional plaintiff' Congress intended to restrict under the PSLRA"); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 512 (E.D. Pa. 2004) ("the limitation against professional plaintiffs was not designed to be applied mechanically to institutional investors"); *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 299 (D. Del. 2003) ("the majority of courts applying the professional plaintiff restriction have concluded that the restriction does not apply to institutional investors").[8]

Key West relies on several decisions that apply the 5-in-3 rule to institutional investors.[9] But all "rely on reasoning that is inconsistent with the [PSLRA]'s express invocation of congressional purpose and with the underlying congressional purpose itself." *Rasella v. Musk*, 342 F.R.D. 74, 83 n.3 (S.D.N.Y. 2022) (rejecting *Knurr*, *Aronson*, and *Alamosa* and appointing an institution as lead plaintiff despite serving as lead plaintiff in 14 cases); *see In re Extreme Networks Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2016 WL 3519283, at *5 (N.D. Cal. June 28, 2016) ("of the cases to have come out of this district in the decade and a half since *Aronson*, all have held that § 78u–4(a)(3)(B)(vi) is not a bar to institutional investors—and with good reason"). Indeed, the 5-in-3 provision states that it must be interpreted "consistent with the purposes" of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(vi), whose legislative history makes clear that "[i]nstitutional investors

---

[8]    *See also, e.g.*, *Homyk v. ChemoCentryx, Inc.*, No. 21-CV-03343-JST, 2022 WL 20299962, at *3 (N.D. Cal. Jan. 28, 2022) (appointing an institution as lead plaintiff despite serving as lead plaintiff in five cases); *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *8 (N.D. Ill. Nov. 15, 2019) (appointing an institution as lead plaintiff despite serving as lead plaintiff in 11 actions); *City of Marysville Gen. Emps. Ret. Sys. v. Nighthawk Radiology Holdings, Inc.*, No. CV 09-659-EJL-CWD, 2010 WL 2000040, at *7-8 (D. Idaho May 19, 2010) (appointing an institution as lead plaintiff despite serving as lead plaintiff in six cases).

[9]    Key West Br. at 4 (citing, *inter alia*, *Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653 (E.D. Va. 2016); *In re Alamosa Holdings, Inc. Sec. Litig.*, No. 5:03-CV-289-C, 2004 WL 578439 (N.D. Tex. Mar. 4, 2004); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1156-57 (N.D. Cal. 1999)).

12

seeking to serve as lead plaintiff may need to exceed th[e] [5-in-3] limitation and do not represent the type of professional plaintiff this legislation seeks to restrict," H.R. Conf. Rep. No. 104-369, at 35 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 734.[10]

*Second*, even if the 5-in-3 rule applied to Birmingham (and it does not), the evidence shows that Birmingham is adequate despite serving as lead plaintiff in six other cases and can and will devote ample and appropriate resources to aggressively prosecuting this action and protecting the interests of the Class. *See, e.g.*, *Ollila v. Babcock & Wilcox Enters., Inc.*, 253 F. Supp. 3d 827, 831 (W.D.N.C. 2017) ("the statute allows the court to permit the appointment of a lead plaintiff notwithstanding any professional plaintiff limitation"; appointing institutional plaintiff with greater losses, despite 5-in-3 rule); *Knurr*, 220 F. Supp. 3d at 662 n.9 (conceding that "PSLRA affords courts discretion to waive the Five-in-Three Provision"). Birmingham has submitted the Declaration of Jay Turner ("Mr. Turner"), Birmingham's Fund Counsel. *See* Declaration of Thomas L. Laughlin, IV ("Laughlin Decl."), Ex. A. Attorney Turner attests that the "suggestion that Birmingham may not be able to adequately monitor numerous cases and counsel simultaneously is baseless and incorrect and has been disproved by Birmingham's prior success in contemporaneously prosecuting multiple securities class actions." Laughlin Decl., Ex. A, at ¶11. Attorney Turner also attests that:

> Birmingham's extensive experience serving as lead plaintiff in prior securities class actions benefits, rather than detracts, from the representation it will provide to class members in this case. Through that experience, Birmingham has developed effective methods and practices to oversee the work of outside counsel, and to ensure that each case in which Birmingham serves as lead plaintiff is prosecuted vigorously, efficiently, and in a cost-effective manner.

---

[10] In addition, in *Knurr*, the institutional investor was lead plaintiff in at least *16* actions—more than twice as many as Birmingham here. *See* 220 F. Supp. 3d at 658.

*Id.* ¶9.  Attorney Turner also reaffirms "Birmingham's commitment to maximize the potential recovery for the class, actively monitor counsel, and to otherwise fulfill the duties that Birmingham will assume if appointed as Lead Plaintiff in this Action."  *Id.* ¶12.  On the other side of the ledger, Key West points to no evidence that Birmingham's other lead plaintiff appointments will have any negative effect on its service as Lead Plaintiff here.  This is fatal to Key West's argument.[11]

Similarly, Blocker-Johnson implies that they are more adequate than Birmingham because of Birmingham's other lead plaintiff appointments.  Blocker-Johnson Br. at 4-5 n.2.  Blocker-Johnson studiously avoids mentioning that in *four* of the six actions in which Birmingham currently serves as lead or co-lead, *counsel for Blocker-Johnson represents Birmingham*.[12]  Nor do Blocker-Johnson identify any evidence that Birmingham cannot adequately represent the Class here and thus its concerns fall far short of the "exacting proof" required by the PSLRA.

## III.  THE COURT SHOULD REJECT BLOCKER-JOHNSON'S "MORE ADEQUATE" COUNSEL ARGUMENT

Blocker-Johnson argues that their counsel is more adequate than Birmingham's counsel based on prior litigation recoveries.  Blocker-Johnson Br. at 4.  But Blocker-Johnson does not argue that Birmingham's counsel is *in*adequate.  Nor could they.  Scott+Scott has recovered billions of dollars for its clients, including hundreds of millions of dollars for defrauded investors.[13]

---

[11]     *See Cree*, 219 F.R.D. at 372 ("[T]he court has been given no reason to believe that TRSL could not devote adequate time and resources to this case notwithstanding its involvement in [fourteen] other active [shareholder] cases."); *Rasella*, 342 F.R.D. at 83 ("Other than the number of litigations in which Oklahoma Firefighters is involved, Amalgamated Bank offers nothing to suggest that Oklahoma Firefighters is not up to serving as lead plaintiff.  Amalgamated Bank thus has not rebutted the presumption in § 78u-4(a)(3)(B)(iii)(I) that Oklahoma Firefighters should be the lead plaintiff in this action.").

[12]     *See City of Mia. Gen. Emps'. & Sanitation Emps'. Ret. Tr. v. Globe Life Inc.*, No. 4:24-cv-00376 (E.D. Tex.); *In re Virtu Fin., Inc. Sec. Litig.*, No. 1:23-cv-03770 (E.D.N.Y.); *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, No. 1:22-cv-06339 (S.D.N.Y.); *Parot v. Clarivate plc*, No. 22-cv-00394 (E.D.N.Y.).

[13]     Jessica M. Casey, a senior member of Scott+Scott's trial team here, received her J.D. and B.A. from the University of Maryland, interned for the late Hon. Peter Jo Messitte (D. Md.), and clerked for

*See, e.g.*, *In re Micro Focus Int'l plc Sec. Litig.*, Lead Case No. 18-cv-01549 (Cal. Super. Ct. San Mateo Cnty.) ($107.5 million recovery); *Okla. Firefighters Pension & Ret. Sys. v. Newell Brands, Inc.*, No. L-003492-18 (N.J. Super. Ct. Hudson Cnty.) ($102.5 million recovery); *In re Infinity Q Diversified Alpha Fund Sec. Litig.*, Index No. 651295/2021 (N.Y. Sup. Ct.) ($45 million recovery); *Policemen's Annuity & Benefit Fund of the City of Chi. v. Bank of Am.*, *N.A.*, No. 1:12-cv-02865 (S.D.N.Y.) ($69 million recovery).  Scott+Scott currently serves as PSLRA lead counsel in numerous securities fraud class actions nationwide.[14]

Birmingham's Maryland counsel, Abato, Rubenstein and Abato, P.A, has represented employee benefit plans for over fifty years.  Abato Rubenstein, with Scott+Scott, represented Steamship Trade Association of Baltimore as lead in *Pompano Beach Police & Firefighters Retirement System v. Olo Inc.*, No. 1:22-cv-08228 (S.D.N.Y.) ($9 million settlement), and, with counsel for Blocker-Johnson, currently represents the Maryland Electrical Industry Pension Plan as lead in *York County v. HP Inc.*, No. 4:20-cv-07835 (N.D. Cal.).

<u>**CONCLUSION**</u>

For all the foregoing reasons, Birmingham respectfully requests that the Court: (1) appoint Birmingham as Lead Plaintiff on behalf of the Class; (2) approve Birmingham's selection of counsel, Scott+Scott, as Lead Counsel; and (3) grant such other and further relief as the Court may deem just and proper.

---

the Hon. James R. Eyler (Maryland Court of Special Appeals).

[14]    *See, e.g.*, *City of Southfield Fire & Police Ret. Sys. v. Hayward Holdings, Inc.*, 2:23-cv-04146 (D.N.J.); *White v. Brooge Energy Ltd.*, No. 2:24-cv-00959 (C. D. Cal.); *Rondini v. Kyverna Therapeutics, Inc.*, No. 3:24-cv-08869 (N.D. Cal.); *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms. Inc.*, No. 3:21-cv-00762 (S.D. Cal.); *Golubowski v. Robinhood Mkts., Inc.*, No. 3:21-cv-09767 (N.D. Cal.); *Severt v. UiPath, Inc.*, No. 1:23-cv-07908 (S.D.N.Y.); *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, No. 1:23-cv-01769 (S.D.N.Y.); *Marselis v. Fox Factory Holding Corp.*, No. 1:24-cv-00747 (N.D. Ga.).

DATED:  April 15, 2025                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

                                          */s/ Thomas L. Laughlin, IV*
                                          Thomas L. Laughlin, IV (*pro hac vice*)
                                          Donald A. Broggi (*pro hac vice* forthcoming)
                                          Nicholas S. Bruno (*pro hac vice*)
                                          The Helmsley Building
                                          230 Park Avenue, 24th Floor
                                          New York, NY 10169
                                          Telephone: (212) 223-6444
                                          Facsimile:  (212) 223-6334
                                          tlaughlin@scott-scott.com
                                          dbroggi@scott-scott.com
                                          jcasey@scott-scott.com
                                          nbruno@scott-scott.com

                                          Jessica M. Casey (*pro hac vice* forthcoming)
                                          Md. Attorney ID No. 1112140313
                                          156 S. Main Street
                                          P.O. Box 192
                                          Colchester, CT 06415
                                          Telephone:  (860) 537-5537
                                          Facsimile:  (860) 537-4432
                                          jcasey@scott-scott.com

                                          *Counsel for Lead Plaintiff Movant City of
                                          Birmingham Retirement and Relief System and
                                          Proposed Lead Counsel for the Class*

                                          **ABATO, RUBENSTEIN AND ABATO, P.A.**
                                          Corey Smith Bott (Bar No. 25673)
                                          Shauna Barnaskas (Bar No. 16755)
                                          809 Gleneagles Court, Suite 320
                                          Baltimore, Maryland 21286
                                          Telephone: (410) 321-0990
                                          csbott@abatolaw.com
                                          sbarnaskas@abatolaw.com

                                          *Local Counsel for Lead Plaintiff Movant City of
                                          Birmingham Retirement and Relief System*

16

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV
