## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

ALAIN GIRAUDON, individually and on
behalf of all others similarly situated,

             Plaintiff,

       v.

INNOVATIVE INDUSTRIAL
PROPERTIES, INC., et al.,

             Defendants.

**CASE No. 1:25-cv-00182-GLR**

**GENERAL EMPLOYEES OF THE UTILITY BOARD OF THE
CITY OF KEY WEST, FLORIDA'S REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD
<u>COUNSEL AND IN FURTHER OPPOSITION TO COMPETING MOTIONS</u>**

Movant, Retirement System for the General Employees of the Utility Board of the City of Key West, Florida ("Key West"), by its counsel, respectfully submits this reply memorandum of law in further support of its motion for its appointment as Lead Plaintiff and approval of its selection of Abraham, Fruchter & Twersky, LLP ("AF&T") as Lead Counsel and The Law Office of Peter T. Nicholl as Local Counsel, and in further opposition to the competing motions.[1]

**<u>INTRODUCTION</u>**

Among the persons moving to be appointed lead plaintiff pursuant to the PSLRA, Key West has suffered the second largest losses from the purchase of Innovative securities during the relevant period; after Birmingham, which purportedly has suffered the largest losses. However, because Birmingham has already exceeded the statutory threshold of serving as lead plaintiff in five securities class actions in a three-year period, pursuant to the PSLRA, it is no longer presumed to be the most adequate lead plaintiff and given Key West is also an institutional investor seeking to serve as a lead plaintiff that has not exceeded this PSLRA threshold, it is the preferred candidate for appointment as lead plaintiff under the PSLRA. The members of the Blocker/Johnson movant group each have a lower amount of claimed losses than Key West. Accordingly, Key West is next in line for consideration as lead plaintiff and, because it otherwise meets the qualifications of Rule 23, it should be appointed Lead Plaintiff and have its selection of Lead Counsel and Local Counsel approved.

In their opposition papers, neither Birmingham nor Blocker/Johnson addressed the issues Key West raised in its opposition to their motions. It is expected, in its reply, that Birmingham will insist that because it is an institution, the Court should disregard the statutory threshold rebutting

---

[1] Unless stated otherwise, capitalized terms have the same meaning as defined in Key West's lead plaintiff opening memorandum (ECF No. 21-1) or opposition memorandum (ECF No. 31).

and limiting application of the presumption that the movant with the largest losses is most adequate to serve as lead plaintiff when it has already served as a lead plaintiff in five securities class action within three years. While the Court has discretion to do so, there is no need to ignore the statute where, as here, a qualified institution, such as Key West, can be appointed lead plaintiff instead of Birmingham.

Blocker/Johnson, in their opposition, merely point to the fact that combined these previously unconnected people have a larger loss than Key West but cannot overcome the fact that separately they each have lost less than Key West and that in promulgating the PSLRA, Congress indicated its preference for the appointment of institutions as lead plaintiffs and courts have followed that preference, even when the institution has less of a loss than individuals or group of individuals. Here, the Court should similarly follow Congress' intent when it enacted the PSLRA and appoint an institution as lead plaintiff.

Blocker/Johnson's other rather unique arguments do not require a different ruling. Their claim that they can better represent all securities purchasers because Blocker also purchased preferred shares is an argument of no merit that has been repeatedly rejected by courts. Similarly without merit, is their claim that having two lead plaintiffs instead of just one institution provides better protection for the class because a lead plaintiff may be disqualified from serving as a representative later in the litigation as it is pure speculation and not a basis for making a lead plaintiff appointment. Finally, their claim that they incurred a larger loss or have a greater financial interest because the loss constitutes a larger percentage of their total assets when compared to Birmingham (or Key West, to the extent the Blocker/Johnson movants make a similar argument with respect to Key West's losses relative to its assets) is in no way supported by the language of the PSLRA and would eviscerate the congressional preference for institutions to serve as lead

plaintiffs given that individuals would likely always incur a greater loss relative to their assets compared to institutions.

For these reasons, and the ones previously submitted in Key West's opening papers and opposition memorandum, Key West respectfully requests that the Court grant its motion to be appointed Lead Plaintiff, approve of its selection of Lead Counsel and Local Counsel and deny the competing motions for lead plaintiff.

**ARGUMENT**

The PSLRA provision that the movant with the largest financial interest in the relief sought by the class is presumptively the most adequate plaintiff can be overcome and rebutted under other provision of the statute. Specifically, the PSLRA provides that the presumption is not applicable to Birmingham here because Birmingham has exceeded the statutory limitation of serving as lead plaintiff in more than 5 securities class actions during a 3-year period (the "5-in-3 Rule"). As such, Birmingham is not the presumptive most adequate lead plaintiff, and the Court should look next to Key West as an alternative institutional investor seeking to be appointed lead plaintiff with the second largest loss of any single person moving for appointment as lead plaintiff.

Although Blocker/Johnson claim they are next, neither of the individuals comprising that group has as large a loss as Key West. Moreover, Key West, as an institution, is the type of lead plaintiff that Congress envisioned when adopting the PSLRA and the type of investor courts have been inclined to appoint as lead plaintiff even if an individual or group has larger losses. These factors apply in this Action and the Court should appoint Key West as Lead Plaintiff rather than a pair of previously unconnected individuals who each have less of a loss than Key West.

**A.      The 5-in-3 Rule Limits Birmingham From Being Presumptive Lead Plaintiff**

The PSLRA's 5-in-3 Rule limits a shareholder from being a presumptive lead plaintiff when that shareholder has served as lead plaintiff in more than five securities class actions in a

three-year period. *See* 15 U.S.C. §78u-4(a)(3)(B)(vi). Birmingham has exceeded this limitation and therefore is not a presumptive lead plaintiff and consideration and preference should be given to the institution with the second highest individual losses --- Key West.

It is expected that Birmingham will argue in its reply that the Court should ignore the statutory language and appoint it lead plaintiff despite the 5-in-3 Rule. The Court should reject any such argument. Although the Court can do so, there is no good reason to ignore the statutory language disfavoring such appointments where, as here, there is an alternative institution available and seeking to serve as lead plaintiff that has not exceeded the 5-in-3 Rule. *See* ECF No. 31 at 2, 4-5 (Key West Opposition Memorandum citing cases where courts applied the 5-in-3 Rule because a different institution could be appointed lead plaintiff). As stated in Key West's opposition memorandum, the 5-in-3 Rule can be overcome in certain limited circumstances, none of which exist in this Action. *See id.*, at 5.

Birmingham did not point to any deficiencies in Key West's lead plaintiff motion and such deficiencies do not exist.[2] Accordingly, as an institution, and as the shareholder with the next single highest losses after Birmingham, Key West should be appointed Lead Plaintiff.

**B.**     **Neither Member of the Blocker/Johnson Group Has Losses as Large as Key West's Losses and They Are Not the Presumptive Lead Plaintiff**

Once Birmingham is eliminated from consideration as presumptive lead plaintiff, the Court should consider the shareholder with the next largest single loss. Here, that shareholder is Key West. *Id.*, at 1 (listing each of the movants' stated losses). Key West also meets the Rule 23 requirements, has no infirmities that prevent it from serving as lead plaintiff, and accordingly, should be appointed Lead Plaintiff.  *See* ECF Nos. 21-1 (memorandum in support of Key West's

---

[2] Blocker/Johnson also did not point to any deficiencies with Key West's motion or with appointing Key West as Lead Plaintiff.

appointment as Lead Plaintiff); ECF No. 31 (memorandum in further support of Key West's appointment as Lead Plaintiff and in opposition to competing motions).

Neither of the individual members of the Blocker/Johnson group has as large a loss as Key West. The only way Blocker/Johnson has more losses than Key West is by combining their losses but such attempts to aggregate have been rejected by courts in similar circumstances, particularly where there is no known relationship between these individuals. *See* ECF No. 31 at 5-6 (referencing cases where the court appointed an institution as lead plaintiff rather than a group of previously unconnected movants).

Moreover, as stated, because Key West is an institution, it is a lead plaintiff that comports closely with congressional intent when enacting the PSLRA, which courts have repeatedly recognized. *See* ECF No. 21-1 at 6-7 (Congress preferred that institutions served as lead plaintiff); ECF No. 31 at 8 (same). When the choice is between an institution or individuals serving as lead plaintiff, the institution is to be selected, even if the individuals have a bit more in losses. *See* ECF No. 31 at 6 (referencing cases where institution with less of a loss was appointed lead plaintiff); *see also Leech v. Brooks Automation, Inc.*, 2006 WL 3690736, at *3 (D. Mass. Dec. 13, 2006) (court stated that individual with largest losses was the least advisable choice for lead plaintiff compared to other two movants, which were institutions).

The other arguments made by Blocker/Johnson do not support appointing them as lead plaintiff rather than Key West. They argue that because Blocker also purchased Innovative preferred shares during the Class Period, they as a group are the movant who can represent all securities purchases. ECF No. 30 at 1-3. Courts have repeatedly rejected that argument when determining lead plaintiff. In the well-known *Enron* case, multiple movants sought to represent a variety of securities purchasers and claimed that different securities each needed a separate lead

plaintiff. *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 459 (S.D. Tex. 2002). The court decisively rejected those claims and appointed one lead plaintiff (an institution) as lead plaintiff to represent all types of securities purchasers. *Id.*, at 451 (court held that the institutional investor could adequately represent holders of Enron common stock, preferred stock, and other financial instruments, and that "appointing multiple lead plaintiffs to represent specialized interests . . . would undermine the purpose of the PSLRA"); *see also In re the Mills Corp. Sec. Litig.,* 2006 WL 2035391, at *4 (E.D. Va. May 30, 2006) (court appointed as sole lead plaintiff an institutional investor that only transacted in common stock and declined to appoint as co-lead plaintiff a purchaser who had purchased preferred stock).

Here, the same logic as used by the *Enron* court applies. For the Innovative common shares and its preferred shares, the facts are the same, the claims are the same, the discovery will be the same, and the evidence will be the same. *See In re Enron Corp.*, 206 F.R.D. at 451 (common facts and legal issues do not support appointing lead plaintiff for different financial instruments). There is absolutely no good reason to appoint a separate lead plaintiff for different securities as a lead plaintiff who purchased one security can pursue the claims for all securities holders as the *Enron* court held. The Blocker/Johnson position should be rejected.[3]

Similarly, Blocker/Johnson make the argument that because their group is composed of two individual purchasers, the Class is better protected should it turn out that a lead plaintiff is later found not to be adequate. ECF No. 30 at 1-3. Such pure speculation has no legitimacy and is not the sole basis to justify the appointment of two unconnected individuals as lead plaintiff instead

---

[3] Some courts have recognized that during the class certification stage of a case it may be preferable to have a separate class representative for different types of securities. Those courts still appointed just one lead plaintiff to represent all types of securities purchasers and, if appropriate, would address the need for separate class representatives at the time for class certification. *See In re Enron Corp.*, 206 F.R.D. at 451.

of an institution; nor does the PSLRA provide any support for that position. Their speculative contention about something unlikely to occur that would somehow disqualify an institution from continuing as lead plaintiff should be rejected.

Blocker/Johnson's other argument in support of their motion – that their loss was greater than Birmingham's (and to the extent similarly argued greater than Key West's) and that they have the greatest financial interest in the litigation because their loss was greater relative to their total assets is no way supported by the language of the PSLRA (focused on the financial interest of the movant in the litigation which in no way is dependent on the size of the loss relative to the movant's total asset portfolio). Such an approach would also completely eviscerate one of the purposes of the PSLRA if accepted. Congress, in the PSLRA, sought to encourage institutions to apply to be lead plaintiffs and for courts to appoint institutions, rather than individuals, as lead plaintiffs. *See Leech v. Brooks Automation, Inc.*, 2006 WL 3690736, at *3-4 & n.4 (D. Mass. Dec. 13, 2006) (rejecting the argument that a greater percentage loss indicates the largest financial interest and stating that no case law supported such an argument).

If a percentage of total assets is used to determine the largest financial interest, in almost every case it would be an individual rather than an institution that is found to have the larger financial interest in the litigation as institutions are far more likely to have higher total assets thus reducing the impact of any single investment loss upon the total asset pool. Such a convoluted justification would result in exactly the opposite of what Congress intended in the PSLRA – instead of institutions being appointed lead plaintiff because they had the largest financial interest in the litigation, it would be individuals for having a smaller asset pool and consequently a reduced capacity to manage the litigation. *Id.*, at *4, n.4 (explaining that if this approach were used an investor who purchased 10 shares and suffered a loss representing 100% of total assets would be

appointed lead plaintiff instead of an investor who purchased one million shares but suffered a loss of only 50% of total assets). This argument is without merit and should be rejected by the Court.[4]

Lastly, as Key West previously argued, Blocker/Johnson also did not provide information needed to determine how it would function as a group. *See* ECF No. 31 at 6-7. If Blocker/Johnson attempts to provide such information now with their reply, any such submissions should be disallowed by the Court. The PSLRA has strict rules and deadlines for filing lead plaintiff motions. Any information that Blocker/Johnson wanted the Court to consider with their motion should have been provided when they initially filed on April 1, 2025. *See*, *e.g.*, *Courter v. Cytodyn, Inc.*, 2021 WL 4989446, at *2 (W.D. Wash. Oct. 27, 2021) (court states that it will not consider new arguments and evidence presented for the first time in the reply that could have been presented earlier). The submission now of any new information to describe how their group would operate should be rejected.

### C.    Key West Should Be Appointed Lead Plaintiff

As shown above, Key West satisfies the PSLRA requirements, the Rule 23 requirements, and does not have any deficiencies or infirmities that would prevent it from serving as Lead

---

[4] In neither of the cases cited by Blocker/Johnson did the court appoint as sole lead plaintiff because it was the movant with the largest relative or percentage loss. In fact, in *Laborers Loc. 1298 Pension Fund v. Campbell Soup Co.*, 2000 WL 486956, at *2, n.5 (D.N.J. Apr. 24, 2000), the court acknowledged that no case has determined the PSLRA's largest financial interest in relative terms rather than absolute terms but appointed two individuals, who applied together to be lead plaintiff, as co-lead plaintiff with the Treasurer of the State of Connecticut, because they "may bring a unique perspective to the litigation." *Id.*, at *3. In *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1342 (N.D. Ala. 2000), also cited by Blocker/Johnson, the court included an individual with the largest loss as a percentage of net worth to be part of a lead plaintiff committee along with two other individuals and the State of Wisconsin Investment Board, stating that he "may be the class representative best suited to bring a claim to recover via joint and several liability for recklessness." *Id.*, at 1342-43.

Plaintiff. In addition, it is an institutional investor, just as Congress intended in enacting the

PSLRA. Accordingly, its motion for appointment as Lead Plaintiff should be granted.[5]

<strong><u>CONCLUSION</u></strong>

For the reasons discussed herein and in its prior filings (ECF Nos. 21 & 31), Key West

respectfully requests that the Court: (i) appoint it as Lead Plaintiff; (ii) approve the selection of

AF&T as Lead Counsel and the Law Office of Peter T. Nicholl as Local Counsel for the class; and

(iii) grant such other relief as is just and proper.

Dated: April 15, 2025                         Respectfully Submitted,


                                              /s/ Scott E. Nevin
                                              Scott E. Nevin, Bar No. 22478
                                              **LAW OFFICE OF PETER T. NICHOLL**
                                              36 South Charles Street, Suite 1700
                                              Baltimore, MD 21201
                                              Telephone: (410) 260-0183
                                              Facsimile: (410) 244-1047
                                              snevin@nicholllaw.com

                                              **Proposed Local Counsel**

                                              **ABRAHAM, FRUCHTER
                                              & TWERSKY, LLP**
                                              Mitchell M.Z. Twersky (*pro hac vice* to be filed)
                                              Atara Twersky (*pro hac vice* to be filed)
                                              Lawrence D. Levit (*pro hac vice* to be filed)
                                              450 Seventh Avenue, 38th Floor
                                              New York, NY 10123
                                              Telephone: (212) 279-5050
                                              Facsimile: (212) 279-3655
                                              mtwersky@aftlaw.com

---

[5] Blocker/Johnson in listing the other securities cases in which the movants are serving as lead plaintiff, also references recoveries obtained by each movant's counsel in PSLRA only securities actions for 2024 only. *See* ECF No. 30 at 4-5, n.2. As shown in AF&T's resume (ECF No. 21-6), AF&T has recovered hundreds of millions of dollars for shareholders in PSLRA securities actions over the years. Moreover, AF&T was co-lead counsel in a securities action that recently settled for $40 million that was just granted preliminary approval. *See In re Sea Ltd. Sec. Litig.*, Index No. 151344/2022, NYSCEF Doc. No. 156 (NY Co. Apr. 14, 2025).

atwersky@aftlaw.com
llevit@aftlaw.com

**Counsel for Key West and Proposed Lead Counsel**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 15, 2025, a true and correct copy of the foregoing General Employees Of The Utility Board Of The City Of Key West, Florida's Reply Memorandum Of Law In Further Support Of Its Motion For Appointment As Lead Plaintiff And Approval Of Its Selection Of Lead Counsel And In Further Opposition To Competing Motions was served by CM/ECF to the parties registered to the Court's CM/ECF system.

Dated: April 15, 2025                    Respectfully Submitted,


                                         /s/ *Scott E. Nevin*
                                         Scott E. Nevin