IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ALAIN GIRAUDON, individually and on behalf of all others similarly situated | * |
| | * |
| Plaintiffs, | |
| | *   Civil Action No. GLR-25-182 |
| v. | |
| | * |
| INNOVATIVE INDUSTRIAL PROPERTIES, Inc. | * |
| Defendants. | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on (1) the Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel, filed by Yolanda Castaneda (ECF No. 20); (2) the Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel, filed by the Utility Board Retirement System City of Key West ("Key West") (ECF No. 21); (3) the Motion to Appoint Counsel and for Appointment as Lead Plaintiff, filed by Dr. Richard A. Blocker and Kelly R. Johnson (ECF No. 22); and (4) the Motion to Appoint Counsel and for Appointment as Lead Plaintiff, filed by City of Birmingham Retirement and Relief System ("Birmingham") (ECF No. 23). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons set forth below, the Court will grant Birmingham's Motion and will deny Castaneda, Key West, and Blocker and Johnson's Motions.

## I. BACKGROUND[1]

On January 17, 2025, Alain Giraudon filed a securities class action complaint on behalf of himself and others who purchased or otherwise acquired securities of Innovative Industrial Properties, Inc. ("IIPR") between February 27, 2024 and December 19, 2024. (Compl. at 1–2, ECF No. 1).[2] The Complaint alleges that IIPR, a Real Estate Investment Trust ("REIT") violated federal securities laws by making materially false and misleading statements and failing to disclose its declining revenues. (Id. at 5–6, 18–22). This action is subject to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. In accordance with the PSLRA, Giraudon caused a notice to be published January 17, 2025. See § 78u-4(a)(3)(A)(i). Accordingly, any member of the purported class had sixty days to file a motion to be appointed as lead plaintiff. See id. Castaneda, Key West, Blocker and Johnson, and Birmingham each timely filed such motions on March 18, 2025. (ECF Nos. 20–23). Castaneda filed a Notice of Non-Opposition on April 1, 2025 (ECF No. 28). Birmingham, Blocker and Johnson, and Key West all filed Oppositions to the competing motions on April 1, 2025. (ECF Nos. 29, 30, 31). On April 15, 2025, Birmingham, Blocker and Johnson, and Key West filed Replies in support of their motions. (ECF Nos. 35, 36, 37).

---

[1] Unless otherwise noted, the Court takes the following facts from the Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

[2] Citations to the page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

There remain three competing Motions for Appointment as Lead Plaintiff by Birmingham, Blocker and Johnson, and Key West. (ECF Nos. 21, 22, 23). For the reasons set forth below, the Court will grant Birmingham's Motion and will deny Key West, and Blocker and Johnson's Motions.

## II.  DISCUSSION

**A.  <u>Legal Standard</u>**

The PSLRA provides that district courts "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The statute requires the court to adopt a rebuttable presumption that "the most adequate plaintiff" is the plaintiff that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

§ 78u-4(a)(3)(B)(iii)(I). The presumption can be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—— (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." § 78u-4(a)(3)(B)(iii)(II).

**B.     Analysis**

    **1.     Filing of Complaint or Motion**

Here, all of the movants seeking to be appointed as lead plaintiff have timely filed a motion within 60 days of the publication of notice of the action, thus satisfying the requirements of § 78u-4(a)(3)(B)(i)(aa). (See ECF Nos. 20–23). What remains to be determined is which of the movants "has the largest financial interest in the relief sought by the class," and whether that person or group "otherwise satisfies" the Rule 23 requirements. Id. § 78u-4(a)(3)(B)(iii)(bb)–(cc).

    **2.     Largest Financial Interest**

Because the PSLRA does not define the proper way to determine which movant has the "largest financial interest in the relief sought," many courts apply a test that includes the following four factors: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. See 7 William B. Rubenstein, Newberg on Class Actions § 22:42 (5th ed. 2017); see, e.g., Palm Tran, Inc. - Amalgamated Transit Union Loc. 1577 Pension Plan v. Emergent Biosolutions Inc., No. PWG-21-1189, 2021 WL 6072812, at *4 (D.Md. Dec. 23, 2021). "The fourth factor is widely considered the most important." Id. Courts typically use the most inclusive class period and select as lead plaintiff the movant with the largest financial interest during that period. Id.

Birmingham has suffered the largest loss at approximately $257,792 (Mem. Supp. Birmingham Mot. Appointment Lead Pl. ["Birmingham Mot."] at 8, ECF No. 23-1). As to the other factors, during the class period, Birmingham purchased 5,538 total shares of IIPR,

retained 5,191 shares, and expended approximately $672,257 on its purchases of IIPR securities during the class period. (Id.). The other movants suffered losses of $183,675 (Mem. Supp. Blocker and Johnson Mot. Appointment Lead Pl. ["Blocker and Johnson Mot."] at 5, ECF No. 22-1) and $129,046 (Mem. Supp. Key West Mot. Appointment Lead Pl. ["Key West Mot."] at 5, ECF No. 21-1). Blocker and Johnson also state that they purchased 10,480 shares of IIPR securities during the class period. (Blocker and Johnson Mot. at 5). Because courts consider the approximate losses suffered by the movant to be the most important determining factor, the Court finds that Birmingham's suffered losses outweigh the higher number of shares owned by Blocker and Johnson. Accordingly, the Court finds that Birmingham has the largest financial interest.

### 3. FRCP Rule 23

Next, the Court must determine whether, as the movant with the largest financial interest, Birmingham meets the requirements of Federal Rule of Civil Procedure 23. For purposes of the PSLRA, courts have narrowed this inquiry to only the typicality and adequacy requirements under Rule 23(a). Walker v. iLearningEngines, Inc., No. DKC 24-2900, 2025 WL 637450, at *2 (D.Md. Feb. 27, 2025). At this stage, the Court should consider "the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted" to determine whether the movant made a "prima facie showing of typicality and adequacy." Id. (quoting Fagen v. Enviva Inc., No. 22-2844-DKC, 2023 WL 1415628, at *2 (D.Md. Jan. 31, 2023). A movant meets the typicality requirement "when the representative plaintiff suffers the same injuries as the

5

class and when the claims are based on the same legal theory" and the adequacy requirement when "the purported class representative and its attorney are capable of pursuing the litigation and . . . neither has a conflict of interest with other class members." Walker, 2025 WL 637450, at *2 (quoting Fagan, 2023 WL 1415628, at *2).

Here, Birmingham's claims are typical of the class, and Birmingham is an adequate class representative. Birmingham shares the same claims with the other class members. Birmingham alleges, as do each of the other class members, that it acquired IIRP securities during the class period, that the prices of those securities were artificially inflated by IIRP's alleged misrepresentations and omissions, and that it suffered losses due to these statements. (Compare Birmingham Mot. at 9, with Compl. at 16–22). Because of Birmingham's large financial loss, it has a significant interest in vigorously prosecuting this action on behalf of the class. Birmingham will benefit from the same relief as other class members. There are no allegations of conflicts with other class members. Accordingly, Birmingham is entitled to a presumption that it is the most adequate lead plaintiff.

### 4.     Attempts to Rebut Presumption

Under the PSLRA, the presumption that a movant is the most adequate plaintiff "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). "[O]nce the presumption is triggered, the question is not whether another movant might do

a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job." In re Cendant Corp. Litig., 264 F.3d at 268. This proof must be "exacting." Dhatt v. Enviva, Inc., No. MJM-23-2474, 2024 WL 580671, at *3 (D.Md. Feb. 13, 2024).

Blocker and Johnson and Key West do not meet this burden of proof. Key West argues that Birmingham is not permitted to serve as lead plaintiff because it has exceeded the statutory threshold of serving as lead plaintiff in five securities class actions in a three-year period. (Key West Opp'n Competing Mots. ["Key West Opp'n"] at 3–6, ECF No. 31). The PSLRA has a "Five-in-Three" Provision which limits parties from serving as lead plaintiff in more than five securities class action cases during any three-year period. 15 U.S.C. § 78u-4(a)(3)(B)(vi). According to the provision, "a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions . . . during any 3–year period," except at the court's discretion and consistent with the statute's purposes. Id. Birmingham argues that it is exempted from this five-in-three provision as an institutional investor. (Reply Supp. Mot. Appoint Lead Pl. by Birmingham ["Birmingham Reply"] at 17–20, ECF No. 35).

Other courts have recognized that the "majority view" is that institutional investors are not subject to the "five-in-three" limitation. Smith v. Suprema Specialties, Inc., 206 F.Supp.2d 627, 641 (D.N.J. 2002) ("The majority of courts that have considered this issue have determined that the limitation does not apply to institutional investors"); see also Rasella v. Musk, 342 F.R.D. 74, 82 (S.D.N.Y. 2022) (collecting cases). Congress has made

clear that it did not intend to apply this prohibition to institutional investors in all cases. The House of Representatives Conference Report for the PSLRA states:

> Institutional investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict. As a result, the Conference Committee grants courts discretion to avoid the unintended consequence of disqualifying institutional investors from serving more than five times in three years.

H.R. Conf. Rep. No. 104–369, at 35 (1999).

Even where other potential lead plaintiffs are institutional investors, courts have declined to apply the five-in-three limitation to the institutional investor presumed to be most adequate under § 78u-4(a)(3)(B)(iii)(I). See e.g., Ollila v. Babcock & Wilcox Enters., Inc., 253 F.Supp.3d 827, 831 (W.D.N.C. 2017) (naming institutional investor with largest financial interest lead plaintiff over another institutional investor despite "five-in-three" restriction); In re Boeing Co. Aircraft Sec. Litig., No. 19 CV 2394, 2019 WL 6052399, at *9 (N.D.Ill. Nov. 15, 2019) (explaining that "exempt[ing] an institutional investor from the bar only when no other institutional investor is seeking appointment as lead plaintiff . . . would exalt the '5-in-3' bar over the other requirements governing the selection of the lead plaintiff, a result that finds support neither in the language of the statute nor its logic"); In re Extreme Networks Inc. Sec. Litig., No. 15-CV-04883-BLF, 2016 WL 3519283, at *8 (N.D.Cal. June 28, 2016) (appointing institutional investor as lead plaintiff where it had served as lead plaintiff in twelve securities class actions within the last three years even where another institutional investor moved for appointment as lead plaintiff).

Here, Birmingham's involvement in six other suits does not prevent it from fulfilling its duties as lead plaintiff. (Key West Opp'n at 2–3). Birmingham has affirmed that it is well-resourced, experienced, and successful at managing multiple simultaneous securities class actions, (Declaration of Jay Turner ["Turner Decl."] ¶¶ 9, 11, 12, ECF No. 35-2), and competing movants have provided no evidence to the contrary. The Court will exercise its discretion under 15 U.S.C. § 78u–4(a)(3)(B)(vi) to appoint Birmingham as lead plaintiff. See Ollila, 253 F.Supp.3d at 831.

Blocker and Johnson argue that they are more adequate lead plaintiffs than Birmingham because they purchased both common and preferred stock, unlike Birmingham which only purchased common stock. (Blocker and Johnson Opp'n Competing Mots. ["Blocker and Johnson Opp'n"] at 2–4, ECF No. 30). Blocker and Johnson also argue that they are more adequate to serve as lead plaintiff than Birmingham because they purchased stock throughout the class period, whereas Birmingham made only a single purchase on one day, and the Court may change the relevant class period "at any point down the road." (Id. at 3). Finally, Blocker and Johnson argue that they are more adequate representatives because they suffered a larger relative loss than Birmingham compared to the total value of all of their assets. (Id. at 4–5). None of these arguments rebut the presumption that Birmingham is the most adequate lead plaintiff.

Blocker and Johnson's arguments are speculative and are not the "exacting proof" required to rebut the presumption that Birmingham is the most adequate lead plaintiff. See Dhatt, 2024 WL 580671, at *3. Blocker and Johnson's position that, as purchasers of both securities at issue, their appointment as lead plaintiff would "insulate the class at the outset

from issues that may arise later in this litigation" is speculative. (Blocker and Johnson Opp'n at 4); see Armour v. Network Assocs., Inc., 171 F.Supp. 2d 1044, 1054 (N.D.Cal. 2001) ("Speculative assertions . . . are . . . insufficient to rebut the lead plaintiff presumption."). Courts have found that the "lead plaintiff is not required to have standing to assert each and every possible claim," and courts "routinely reject motions of other movants seeking to be appointed co-lead plaintiff simply because they have standing to assert an additional claim." City of Ann Arbor Employees' Ret. Sys. v. ICG, Inc., No. CV 2:07-0226, 2007 WL 9718299, at *3 (S.D.W.Va. July 18, 2007). Blocker and Johnson's contention that the class period may at some point change is also entirely speculative. Lastly, Blocker and Johnson's relative loss argument has been rejected by numerous courts. See e.g. Patel v. Coinbase Glob., Inc., CV No. 22-4915, 2022 WL 17582549, at *3 (D.N.J. Dec. 12, 2022) ("[E]valuating the movants' financial interests based on relative loss would frustrate Congress's preference that institutional investors serve as lead plaintiffs in securities class actions.") (cleaned up); In re Netflix, Inc., Sec. Litig., No. 12-0225 SC, 2012 WL 1496171, at *7 (N.D. Cal. Apr. 27, 2012) (rejecting the relative loss approach because it "would defeat the PSLRA's aim of putting institutional investors at the helm of more private securities class actions").

It is not this Court's job to "compare and contrast the relative merits" of different movants. Tchatchou v. India Globalization Cap., Inc., No. 8:18-03396-PWG, 2019 WL 1004591, at *9 (D.Md. Feb. 28, 2019). Blocker and Johnson provide no proof that Birmingham cannot fulfill its responsibilities as lead plaintiff and, without such proof, the Court cannot disrupt the presumption that Birmingham is the most adequate lead plaintiff.

In conclusion, Birmingham has established that it is the most adequate plaintiff because it has the largest financial stake in the outcome of this litigation and has satisfied the requirements under Rule 23(a). The competing movants for lead plaintiff have not rebutted this presumption.

### 5. Lead Counsel

The lead plaintiff may choose lead counsel "subject to the approval of the court." 15 U.S.C. § 78u-4(a)(3)(B)(v). Birmingham has selected the law firm of Scott + Scott. (Birmingham Mot. at 10). The exhibits submitted in support of Birmingham's selection demonstrates that Scott + Scott has significant experience prosecuting securities cases of this nature. (See Scott + Scott Firm Resume at 2–37, ECF No. 23-6). Accordingly, Scott + Scott will be approved as lead counsel.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Birmingham's Motion (ECF No. 23) and will deny Castaneda, Key West, and Blocker and Johnson's Motions (ECF Nos. 20–22). A separate Order follows.

Entered this 22nd day of April, 2025.

/s/
George L. Russell, III
Chief United States District Judge