**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| IN RE INNOVATIVE INDUSTRIAL PROPERTIES, INC. SECURITIES LITIGATION | Case No. 1:25-cv-00182-GLR<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION**
**FOR A PARTIAL LIFT OF THE DISCOVERY STAY**

Lead Plaintiff City of Birmingham Retirement and Relief System ("Plaintiff") submits this Memorandum of Law in support of its Motion for a partial lift of the Private Securities Litigation Reform Act of 1995's ("PSLRA") discovery stay for the limited purpose of serving preservation subpoenas on non-parties PharmaCann, Inc.; 4Front Ventures Corp.; Gold Flora, LLC; and Tilt Holdings, Inc.

Lead Counsel for Plaintiff has conferred by e-mail with counsel for Defendants and Defendants do not oppose the motion.

## I.    INTRODUCTION

Defendant Innovative Industrial Properties, Inc. ("IIPR" or the "Company") is a real estate investment trust, or "REIT," that makes its money by renting to, and investing in, state-licensed cannabis companies and, in return, receiving monthly rent payments from those tenants. ¶¶2, 21-24.[1]  Plaintiff alleges that, during the Class Period of February 26, 2024 to March 28, 2025, inclusive (the "Class Period"), the following four IIPR tenants were in dire financial straits and would soon default on their rent payments to IIPR: PharmaCann, Inc. ("PharmaCann"); 4Front Ventures Corp. ("4Front"); Gold Flora, LLC ("Gold Flora"); and Tilt Holdings, Inc. ("Tilt") (together, "the Defaulting Tenants"). ¶¶1, 4, 25-44.  Despite knowing (or recklessly disregarding) the Defaulting Tenants were financially imploding, Defendants made numerous false and misleading statements (i) emphasizing IIPR's robust due diligence and monitoring protocols which misled investors as to the threat posed by the Defaulting Tenants, and (ii) touting new investments in those same tenants. ¶85-223.  The truth was revealed to the market in a series of events from November 2024 to March 2025, during which time, IIPR announced that the Defaulting Tenants

---

[1]    All citations beginning with "¶" or "¶¶" are to Plaintiff's Consolidated Complaint for Violations of the Federal Securities Laws (ECF No. 50).

had stopped paying rent, defaulted on their lease obligations, and ultimately, that "a substantial portion of [IIPR's] tenant[s]" were not "financially viable long-term." ¶¶224-51.

As a result, the Defaulting Tenants' documents regarding their dealings with IIPR, and their financial performance, are highly relevant to this action and Plaintiff will diligently pursue such discovery. But, under the PSLRA, all discovery is stayed "during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. §78u-4(b)(3)(B). A partial lifting of the PSLRA discovery stay is warranted here because there is a clear risk that, absent being required to take measures now to preserve documents, materials from the Defaulting Tenants may not be available later.

The Defaulting Tenants' documents are at high risk of being lost or destroyed because all four of the Defaulting Tenants have experienced significant financial turmoil that casts doubt on their continued existence. Indeed, 4Front's U.S. subsidiaries (who had leases with IIPR) are currently in voluntary receivership in aid of liquidation and 4Front has declared bankruptcy in Canada. *See In re 4Front U.S. Holdings, Inc.*, Case No. 2584CV01405 (Mass. Super. Ct. Suffolk Cnty. May 22, 2025). Gold Flora and its related entities are currently in receivership. *See In re Gold Flora Corp.*, Case No. 25SMCP00161 (Cal. Super. Ct. L.A. Cnty. Mar. 27, 2025). Tilt is working to complete the planned divestiture of its "plant-touching business," which was the side of Tilt's business that had dealings with IIPR. *See, e.g.*, TILT Q1 2025 Earnings Call, May 15, 2025 (Exhibit 5). And, while PharmaCann still appears to be a going concern, its inability to pay rent to IIPR strongly suggests it is only a matter of time before it is insolvent too. ¶¶230-45. Under these circumstances, courts routinely allow partial relief from the PSLRA's blanket stay of discovery to permit plaintiffs to serve preservation subpoenas on non-parties to prevent crucial

2

evidence from being lost forever. *See California Pub. Emps'. Ret. Sys. v. UnitedHealth Group, Inc.*, No. 24-cv-1743, ECF No. 128 (D. Minn. June 18, 2025); *N.Y. State Tchrs' Ret. Sys. v. Gen. Motors Co.*, 2015 WL 1565462, at *5 (E.D. Mich. Apr. 8, 2015) (citing cases). Plaintiff seeks the same limited relief here. *See, e.g.*, Declaration of Corey S. Bott in Support of Plaintiff's Motion for Partial Lift of Discovery Stay ("Bott Declaration"), Exhibits 1-4 (the "Preservation Subpoenas").

## II.    FACTUAL AND PROCEDURAL BACKGROUND

An initial complaint was filed in this matter on January 17, 2025 (ECF No. 1). On April 22, 2025, the Court designated Plaintiff as Lead Plaintiff and appointed Scott+Scott Attorneys at Law LLP as Lead Counsel (ECF No. 39). Plaintiff filed its Consolidated Complaint on June 23, 2025 (the "Complaint" (ECF No. 50)). The nub of the Complaint is that Defendants made numerous materially false and misleading statements regarding (i) Defendants' due diligence on, and monitoring of, the Defaulting Tenants, and (ii) touting investments in the Defaulting Tenants that Defendants knew (or recklessly disregarded) would soon default on their rents. It follows from these allegations that evidence in the possession, custody, or control of the Defaulting Tenants is highly relevant to Plaintiff's claims. Such evidence will be used to prove at least what Defendants knew or should have known about the Defaulting Tenants' finances and their course of dealing with IIPR.

The Complaint's allegations about the Defaulting tenants' deteriorating finances is a strong basis to conclude that further evidence from the Defaulting Tenants is likely critical to this case. For example, PharmaCann first defaulted on its rent payments to IIPR in December 2024, and even though IIPR quickly reached an agreement with PharmaCann to resolve its defaults in January 2025, PharmaCann defaulted yet again in March 2025. ¶230-45. PharmaCann also has numerous state tax liens filed against it, and was sued by a company for failure to pay over $1 million for

improvements to an IIPR-owned property.  ¶¶67-68.  Similarly, 4Front, Gold Flora, and Tilt had mounting year-over-year net losses and negative working capital during the Class Period.  ¶70. All three companies were facing difficulties raising capital and managing its debt burden, and all three had been warning their investors from as early as 2023 that their auditors had substantial doubts about the companies' abilities to continue as a going concern.  ¶¶69, 73.  4Front was also saddled with state and federal tax liens for failure to pay back taxes.  ¶67.  4Front and Tilt had stopped paying rent to IIPR in September 2024, and 4Front, Tilt, and Gold Flora ultimately defaulted for failure to pay rent in March 2025.  ¶¶225-26, 246.  These financial struggles (and others) should be reflected in the Defaulting Tenant documents Plaintiff now seeks to preserve.

As a result of the Defaulting Tenants' financial struggles, 4Front and Gold Flora are now in receivership, and Tilt is divesting itself of the portion of the business that had dealings with IIPR.  In May 2025, 4Front's U.S. subsidiaries filed for voluntary receivership in aid of liquidation. ¶37.  *See In re 4Front U.S. Holdings, Inc.*, Case No. 2584CV01405 (Mass. Super. Ct. Suffolk Cnty. May 22, 2025).  At the time of the Consolidated Complaint's filing, these entities purportedly owed more than $59 million to lenders, and an additional $16 million to sellers of businesses that 4Front acquired, with total cost of debt payments and potential exposure resulting from litigation estimated at over $140 million.  ¶68(d).  As of June 2025, 4Front had declared bankruptcy in Canada.  ¶37.

Similarly, Gold Flora and its related entities filed for dissolution and receivership in Los Angeles Superior Court on March 27, 2025.  ¶41.  *See In re Gold Flora Corp.*, Case No. 25SMCP00161 (Cal. Super. Ct. L.A. Cnty. Mar. 27, 2025).  At the time of the petition, these entities collectively owed more than $52 million to lenders and over $60 million to unsecured creditors and providers of goods and services.  ¶68(d).

4

Finally, on November 14, 2024, Tilt announced that it was undertaking a review of "strategic alternatives for its plant-touching business," and beginning in February 2025, Tilt announced that it was planning to divest itself of its plant-touching business. *See* Press Release, "TILT Holdings Reports Third Quarter 2024 Results and Announces Strategic Review of its Plant-Touching Business," (November 14, 2024) (Exhibit 6); Press Release, "TILT Holdings Signs Definitive Agreement to Divest Retail Locations in Massachusetts to In Good Health for $2 Million," (February 3, 2025) (Exhibit 7).

## III.    ARGUMENT

The PSLRA's pre-motion-to-dismiss discovery stay is not absolute and can be lifted if "particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. §78u-4(b)(3)(B).[2] Lifting the stay requires showing that (1) "exceptional circumstances exist, such that allowing discovery would not violate the ethos of the PSLRA discovery stay, and further that (2) particularized discovery is (3) necessary to either (a) preserve evidence or (b) prevent undue prejudice to a party." *In re Under Armour Sec. Litig.*, 2021 WL 633373, at *2 (D. Md. Feb. 18, 2021) (citation modified).

Courts routinely find that this standard is satisfied where, as here, the request to partially lift the stay is to serve subpoenas on third parties requiring document preservation, as opposed to document production. *See, e.g., California Pub. Emps'. Ret. Sys. v. UnitedHealth Group, Inc.*, No. 24-cv-1743, ECF No. 128 (D. Minn. June 18, 2025); *In re Equifax Inc. Sec. Litig.*, 2018 WL 3023278, at *7 (N.D. Ga. June 18, 2018) ("[S]uch a decision is consistent with the PSLRA because in it Congress expressed a desire to make sure that relevant evidence is preserved without being

---

[2] A motion to dismiss is not currently pending in the instant case, but the discovery stay nevertheless applies, as Defendants have indicated that they intend to move to dismiss. *See, e.g., In re Royal Ahold N.V. Securities & ERISA Litigation*, 220 F.R.D. 246, 249 (D. Md. 2004).

subjected to production."); *Gen. Motors*, 2015 WL 1565462, at *6 ("This Court agrees that allowing [Plaintiff] to serve the proposed preservation subpoenas on the identified third parties will maintain the status quo until the Court rules on Defendants' pending motions to dismiss"); *In re Tyco Int'l, Ltd., Sec. Litig.*, 2000 WL 33654141, at *5 (D.N.H. July 27, 2000) ("granting a plaintiff leave to issue subpoenas that give specified third parties notice of the action and impose upon them only a duty to preserve certain relevant evidence in their possession is consistent with the purposes underlying the PSLRA"); *In re Grand Casinos, Inc. Sec. Litig.*, 988 F. Supp. 1270, 1272 (D. Minn. 1997) ("the Plaintiffs' service of Subpoenas *duces tecum* would further Congress' intent by subjecting relevant evidence to a "stay put" directive whether in the hands of the parties, or in those of third-parties, but would not allow the Plaintiff to engage in discovery until such time as the District Court should rule on the Motion to Dismiss in a way that would warrant an enforcement of the Subpoenas."). *Cf. In re Carnegie Intern Corp. Sec. Litig.*, 107 F.Supp.2d 676 (D. Md. 2000) (quashing subpoena to produce documents due to the PSLRA discovery stay, but ordering third-party to preserve all documents subject to that subpoena). As shown below, the standard for allowing Plaintiff to serve the Preservation Subpoenas is easily met.

### A. "Exceptional Circumstances" Warrant Preservation Now

"Exceptional circumstances" warrant lifting the PSLRA discovery stay when "the rationales underlying the PSLRA's discovery stay do not support continued imposition of a stay . . . ." *Under Armour Sec. Litig.*, 2021 WL 633373, at *2. The purpose of the staying discovery is to "minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that corporate defendants will settle those actions rather than bear the high cost of discovery . . . or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint." *Royal Ahold*, 220 F.R.D. at 249 (citation modified).

Neither of these concerns are present here. The Preservation Subpoenas will be directed only to third parties (not Defendants) and request only preservation (not production). As a result, the Preservation Subpoenas are not "a means to force the settlement of a frivolous lawsuit," or to "search for new claims to assert against the Defendants." *Under Armour Sec. Litig.*, 2021 WL 633373, at *2. To the contrary, the PSLRA itself contemplates the preservation of relevant evidence, and Plaintiff's motion is consistent with that goal. *See* §78u-4(b)(3)(C). Consequently, "exceptional circumstances" exist here.

### B. The Preservation Subpoenas Are Particularized

The Preservation Subpoenas are sufficiently particularized so as to support a partial lifting of the stay. "A discovery request is particularized to the extent that it is directed at specific persons" and "identifies specific types of evidence that fall within its scope." *Tyco Int'l. Ltd.*, 2000 WL 33654141, at *4 (citation modified); *see also Royal Ahold*, 220 F.R.D. at 250 (subpoena request for "clearly defined universe of documents" was particularized). The Preservation Subpoenas are "directed to specific persons," the Defaulting Tenants. *See* Bott Declaration, Ex. 1-4. The Preservation Subpoenas also clearly and directly identify "specific types of evidence." *See id.* For example, those subpoenas seek the preservation of only three categories of evidence: (i) documents concerning any and all agreements between the Defaulting Tenants and IIPR; (ii) documents regarding any financial information provided by the Defaulting Tenants and IIPR; and (iii) to the extent not already covered by the first two categories, documents sufficient to show the financial state of the Defaulting Tenants' businesses. And the information to be preserved is squarely relevant to this action, which centers on the Defaulting Tenants' finances, performance, and agreements with, and disclosures to, IIPR. *See Royal Ahold*, 220 F.R.D. at 250 (the meaning of the phrase "particularized" "must take into account the nature of the underlying litigation").

Consequently, the Preservation Subpoenas are particularized enough to support partially lifting the discovery stay.

Courts have found similar requests to be sufficiently particularized. *See Koncelik v. Savient Pharms., Inc.*, 2009 WL 2448029, at \*1 (S.D.N.Y. Aug. 10, 2009) (finding plaintiffs' request sufficiently particularized because, "although the preservation subpoenas plaintiff expects to serve [on third parties] are broad, they require only the preservation of documents, not the documents' actual production"); *Grand Casinos*, 988 F. Supp. at 1273 (granting plaintiff's request to serve subpoenas *duces tecum* because "the 'discovery' is distinctly 'particularized' [and] it does no more than 'preserve evidence' in the care, custody or control of third-parties"). So too here.

### C.  The Preservation Subpoenas Are Necessary

The Preservation Subpoenas are necessary both to preserve evidence and prevent undue prejudice to Plaintiff. Under the PSLRA, "undue prejudice" means "improper or unfair treatment amounting to something less than irreparable harm." *Gen. Motors*, 2015 WL 1565462 at \*3 (citation modified). Undue prejudice exists where, as here (i) "[d]ocumentary evidence in the care, custody, or control of third parties"; (ii) is not "expressly subject to any preservation order"; and (iii) "the destruction of relevant files" might occur "in the ordinary course of business." *Id. See also Royal Ahold*, 220 F.R.D. at 251 (preservation necessary when the company "appear[ed] to be undertaking a wide-ranging corporate reorganization" and had "already divested itself of key subsidiaries," thus creating a "reasonable concern that documents may be lost.").

Concerns that crucial evidence may be lost forever are particularly acute here. The Defaulting Tenants are third parties that, to Plaintiff's knowledge, are not expressly subject to any preservation order related to this action. Moreover, as detailed above, all of the Defaulting Tenants are experiencing significant financial turmoil that cast heavy doubt on their continued viability. Indeed, two of the Defaulting Tenants are in receivership, and one is divesting itself from the

8

business that was involved in its lease agreements with IIPR.  (*See supra* pp. 2-5).  Thus, Plaintiff is rightly concerned that potentially relevant information in the possession of the Defaulting Tenants may be destroyed in the ordinary course as the Defaulting Tenants winddown their business, or otherwise lost during the receivership or divestiture process.  *See Savient Pharms.*, 2009 WL 2448029, at *2 ("The only thing that is certain is that without preservation subpoenas, the third party corporations in possession of potentially relevant information are free to destroy that information.").  The Preservation Subpoenas are necessary here to ensure that this does not happen and prevent the undue burden to Plaintiff resulting from the avoidable loss of potentially critical evidence.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests a partial lift of the discovery stay for the limited purpose of serving preservation subpoenas on non-parties PharmaCann, Inc.; 4Front Ventures Corp.; Gold Flora, LLC; and Tilt Holdings, Inc.

DATED: July 16, 2025                    **SCOTT+SCOTT ATTORNEYS AT LAW LLP**

/*s*/ Jessica M. Casey
Jessica M. Casey (Bar No. 31720)
Jacob L. Lieberman (admitted *pro hac vice*)
156 S. Main Street,
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Fax: (860) 537-4432
jcasey@scott-scott.com
jlieberman@scott-scott.com

Donald A. Broggi (admitted *pro hac vice*)
Susan Hu (admitted *pro hac vice*)
Lana V. Levin (admitted *pro hac vice*)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
Fax: (212) 223-6334
dbroggi@scott-scott.com
shu@scott-scott.com
llevin@scott-scott.com

*Counsel for Lead Plaintiff City of Birmingham Retirement and Relief System*

**ABATO, RUBENSTEIN AND ABATO, P.A.**

Corey Smith Bott (Bar No. 25673)
Shauna Barnaskas (Bar No. 16755)
809 Gleneagles Court, Suite 320
Baltimore, Maryland 21286
Telephone: (410) 321-0990
csbott@abatolaw.com
sbarnaskas@abatolaw.com

*Local Counsel for Lead Plaintiff City of Birmingham Retirement and Relief System*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 16, 2025, I caused the foregoing to be electronically filed with

the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

email addresses denoted on the Electronic Mail Notice List.

*/s/* Jessica M. Casey

Jessica M. Casey

11