IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN TRE INNOVATIVE INDUSTRIAL PROPERTIES, INC. SECURITIES LITIGATION | ) ) ) ) ) | Case No. 1:25-CV-00182-GLR |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS LEAD PLAINTIFF'S CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................................ii.

INTRODUCTION .............................................................................................................1

ARGUMENT.....................................................................................................................2

    I.      THE OPPOSITION DOES NOT CURE THE COMPLAINT'S LACK OF FACTS. .........................................................................................................2

          A.      The Facts Cited in the Complaint Fail to Create Adverse Inferences. ..............................................................................................2

          B.      The Remaining Cases Plaintiff Cites Support Dismissal.............................8

    II.     PLAINTIFF FAILS TO OVERCOME NUMEROUS ARGUMENTS. .................9

    III.    DEFENDANTS CORRECTLY IDENTIFIED NUMEROUS STATEMENTS AS FORWARD-LOOKING.........................................................11

    IV.    PLAINTIFF'S SCIENTER ARGUMENT SIMLARLY FAILS..........................12

    V.    THE OPPOSITION UNDERSCORES THE PROLIXITY OF THE COMPLAINT. ........................................................................................................14

CONCLUSION..................................................................................................................15

TABLE OF AUTHORITIES

Page(s)

Cases

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC,*,
 423 F. Supp. 2d 348 (S.D.N.Y. 2006) ................................................................................. 8

*Handal v. Innovative Indus. Props., Inc.*,
 157 F.4th 279 (3d Cir. 2025) ............................................................................................. 10

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
 741 F. Supp. 2d. 511 (S.D.N.Y. 2010) .............................................................................. 12

*In re Emergent Biosolutions Inc. Sec. Litig.*,
 2023 WL 5671608 (D. Md. Sept. 1, 2023) .......................................................................... 8

*In re Genworth Fin. Inc. Sec. Litig.*,
 103 F. Supp. 3d 759 (E.D. Va. 2015) ............................................................................ 5, 12

*In re James River Gr. Holdings, Ltd. Sec. Litig.*,
 2023 WL 5538218 (E.D. Va. Aug. 28, 2023) ............................................................ 5, 6, 13

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
 543 F. Supp. 3d 96 (D. Md. 2021) .................................................................................... 12

*In re Mut. Funds., Inv. Litig.*,
 437 F. Supp. 2d 444 (D. Md. 2006) ................................................................................... 15

*In re UBS AG Sec. Litig.*,
 2012 WL 4471265 (S.D.N.Y. 2012) ................................................................................... 7

*In re Virtu Fin., Inc. Sec. Litig.*,
 770 F. Supp. 3d 482 (E.D.N.Y. 2025) ................................................................................ 8

*Keeney v. Larkin*,
 306 F. Supp. 2d 522 (D. Md. 2003) .................................................................................... 8

*Matrixx Initiatives, Inc. v. Siracusano*,
 563 US. 27 (2011) ............................................................................................................... 8

*Noble Asset Mgmt. v. Allos Therapeutics, Inc.*,
 2005 WL 4161977 (D. Colo. Oct. 20, 2005) ...................................................................... 7

*Phillips v. LCI Int'l, Inc.*,
 190 F.3d 609 (4th Cir. 1999) .............................................................................................. 4

*Plumhoff v. Cent. Mortg. Co.*,
 286 F. Supp. 3d 699 (D. Md. 2017) ................................................................................... 15

*Raab v. Gen. Physics Corp.*,
    4 F.3d 286 (4th Cir. 1993) ................................................................................................ 7, 9

*Tchrs. Ret. Sys. of LA v. Hunter*,
    477 F.3d 162 (4th Cir. 2007) ................................................................................................ 13

*Tchatchou v. India Globalization Cap. Inc.*,
    2021 WL 307415 (D. Md. Jan. 29, 2021).............................................................................. 4, 5

Defendants,[1] by and through their counsel, respectfully submit this Reply Memorandum of Law in support of their Motion to Dismiss Lead Plaintiff's Complaint.

**INTRODUCTION**

On August 22, 2025, Defendants filed their Motion to Dismiss the Complaint, and accompanying Memorandum (Dkt. 60, 60-1, the "Memorandum" or "Mem."). Defendants argued that the Complaint should be dismissed with prejudice due to its (i) failure to state a claim for any violation of Section 10(b) and Rule 10b-5 under the PSLRA, and (ii) failure to state a claim for individual liability on behalf of the manager Defendants. Defendants further argued that the Complaint should be dismissed, not based on the Complaint's length, but due to its redundancy and overall confusing content. On October 21, 2025, Plaintiff filed its Opposition to the Motion to Dismiss (the "Opposition" or "Opp.").

Plaintiff's Opposition doubles down on the deficient theories of the Complaint. First, Plaintiff argues that Defendants must have misrepresented due diligence performed years before the class period when accepting four tenants, which ultimately became IIPR's paying tenants with long payment histories. Second, Plaintiff argues that Defendants were entitled to receive, and did receive on a regular basis, periodic financial data from each of those four tenants (despite failing to plead facts in support). Third, Plaintiff contends that publicly-available information, which was part of the "total mix" of information available to investors, reported that each of those four tenants encountered material financial difficulties. Fourth, Plaintiff simply presumes, based on zero confidential sources or non-public information, that data Defendants allegedly received enabled them to predict that those four tenants were going to default in the near-term, but Defendants concealed such knowledge from the market or misled the market with allegedly false assurances.

---

[1] Defined terms from the Motion to Dismiss the Complaint and Memorandum are used herein.

*Defendants' Reply Memorandum in Support of Motion to Dismiss*        Page **1** of **17**

This tortured theory breaks down with even a cursory inspection. First, the factual connections Plaintiff irrationally attempts to make are temporally unsound, undercutting any inferences. Second, there are no well-pled facts suggesting that Defendants had a clairvoyant vision from a crystal ball about these tenants' futures and likelihood of defaulting—or at least any information better than that already known by the market. Third, the Opposition and Complaint make clear that Plaintiff's theory is grounded in information available to the investing public—information the market is presumed to have in the efficient market necessary for Plaintiff's fraud-on-the-market claims. While making these arguments, Plaintiff relies on inapposite case law, fails to address (i) its editorial manipulation of Defendants' statements, (ii) allegations in the Complaint that lack supporting facts, (iii) and the forward-looking nature of Defendants' statements, and fails to allege scienter in its prolix Complaint.  For these reasons, detailed further below, Plaintiff's claims should be dismissed.

## ARGUMENT

## I.    THE OPPOSITION DOES NOT CURE THE COMPLAINT'S LACK OF FACTS.

Defendants argued that the Complaint concluded—but did not prove or otherwise show—that Defendants made any false or misleading statements that would constitute a violation of Section 10(b) or Section 20(a). The Opposition fails to rebut these arguments, underscoring the Complaint's flaws, and warranting dismissal.

### A.    The Facts Cited in the Complaint Fail to Create Adverse Inferences.

#### 1.    The Complaint's Temporal Infirmities Undercut Allegations of Falsity.

Plaintiff's roughly 10-page Statement of Facts mirrors the Complaint, complete with copy and pasted snippets of statements with argument added on top. *See, e.g.*, Opp. at 4 (alleging that Defendants "placed special emphasis" on risk mitigation by citing to an *88 paragraph* passage of

the Complaint); Opp. at 6 (claiming Defendants "assured investors" of tenants' solid financial footing" while quoting that Defendants "feel very good about our current tenant roster").

Contextualizing Plaintiff's Statement of Facts proves just how lacking its claims are. In addition to offering numerous concessions in the Statement of Facts that Plaintiff—and investors writ large—had access to public information such that they understood the cannabis industry brings with it "concentrated and acute" risks (Opp. at 3), Plaintiff repeats its allegations that it had access to facts about IIPR's tenants "from SEC disclosures, public sources, and court filings [] show[ing] that the Defaulting Tenants were near financial collapse." Opp. at 7. Plaintiff once again does not indicate *how* or *when* it learned of this publicly available information, only that the information was public, and that it was "contemporaneous." Opp. at 8. Among these allegedly "contemporaneous" facts were warnings in public filings by 4Front, Gold Flora, and Tilt "from as early as 2023" that those tenants' auditors had questions about the companies' ability to continue as going concerns. Opp. at 7, Compl. ¶ 69. But warnings in 2023 are temporally remote from statements made by Defendants a year later, 4Front or Tilt ceasing rent payments in September 2024 (Compl. ¶ 81), PharmaCann ceasing rent payments in December 2024 (Compl. 82), or Gold Flora's dissolution on March 27, 2025 (Compl. ¶ 68d). Indeed, even if (allegedly) auditors had doubts regarding those entities' status as a going concern, they went *years* both as going concerns and rent-paying tenants. Moreover, disclosures in public filings made *before* February 2024, the start of the purported Class Period, were accessible to Plaintiff before it started investing in IIPR.

Similarly, the Opposition fails to address the facts and arguments advanced by Defendants regarding the timing of the allegedly flawed diligence. As noted in the Memorandum, IIPR performed diligence on *potential tenants—before* taking these businesses on as tenants. *See* Mem. at 6, quoting 2023 10-K at 25. Again, timing is critical and, here, fatal to Plaintiff's narrative.

PharmaCann signed its first lease in 2016. Compl. ¶ 29. The opposition fails to recognize the temporally remote onboarding of 4Front, Gold Flora, and Tilt, years before the alleged class period. In other words, the Complaint fails to explain the temporal gap between any allegedly faulty diligence of IIPR's "potential tenants" and the ultimate default of those tenants.

**2.    Plaintiff Fails to Plead Facts, Through Confidential Witnesses or Otherwise, That Foresaw Any Specific Tenant Default.**

Defendants' primary argument in the Memorandum is that Plaintiff fails to adduce any specific facts to support an inference of knowledge, or reckless ignorance of falsity. Past the four tenants at issue being financially distressed, Plaintiff pled no facts indicating that Defendants knew, or should have known, that any default was imminent. While the public information disclosed by the four tenants may suggest they *might* default, Plaintiff cites no confidential witnesses, internal documents, or contemporaneous facts showing any knowledge that these tenants *would* default. *See Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 615 (4th Cir. 1999) (affirming dismissal under the PSLRA where Plaintiffs mischaracterized facts in the public record and their allegations were "not based on any confidential or private information[,]" thus providing no grounds for statements to be deemed false or misleading). In its Opposition, Plaintiff argues that it need not do so. Opp. at 17. But the cases on which it relies are all distinguishable.

Plaintiff advances *Tchatchou v. India Globalization Cap. Inc.*, 2021 WL 307415 (D. Md. Jan. 29, 2021), for the tenet that a complaint need not provide confidential witness testimony. Opp. at 18. In *Tchatchou* (which does not discuss confidential witness testimony at all), the Court relied on the plaintiff's presentation of contemporaneous facts which proved the *impossibility* of statements that a company had a contract with a company to produce CBD drinks in Malaysia, which was illegal in that country. *7-8. This contemporaneous fact made the company's statement in *Tchatchou* a direct and clear lie. Plaintiff has pled nothing of the sort here. Indeed, Plaintiff's

closest *argument*, unsupported by fact, is that it *must have been* impossible for Defendants not to know that their tenants were on the precipice of default, because they monitored their tenants. These allegations—which rely on numerous assumptions rather than incontrovertible fact—are nothing like those in *Tchatchou*.  Here, all Plaintiff has is speculation.

Plaintiff most heavily relies on *In re Genworth Fin. Inc. Sec. Litig.,* 103 F. Supp. 3d 759 (E.D. Va. 2015), citing it *passim* throughout its Opposition. But this case, which is not binding on this court in the first instance, proves just how threadbare the Complaint is here. Plaintiff relies on *Genworth* because it involves allegations that a company falsely represented it was doing a "review." As Plaintiff puts it, the court there found that "assurances of a 'broad, intensive review' of a business line were misleading for omitting that defendants did not conduct such a review." Opp. at 15. What Plaintiff fails to disclose is that the defendants in *Genworth* had provided specific statements about the review, including how long it took and that it was completed in 2013, but later *directly admitted* that they had not undertaken such a review. *Genworth*, 103. F. Supp. 3d at 772-773. In other words, that plaintiff's claim for falsity of the "review" statement survived because it alleged actual falsity based on a direct admission. Here, Plaintiff does no such thing, instead alleging that statements about conducting diligence *must* have been false because the tenants ultimately failed. Claims like these in *Genworth*, where the plaintiff "failed to prove sufficient facts to establish a reasonable belief in the falsity of [the] statements[,]" were summarily dismissed. *Id*. at 782. Plaintiff's allegations here are irrefutably akin to the latter claims and therefore warrant dismissal.

Plaintiff's reliance on *In re James River Gr. Holdings, Ltd. Sec. Litig.*, 2023 WL 5538218 (E.D. Va. Aug. 28, 2023) is equally misplaced. In that case, the court allowed a Section 10(b) claim to survive because the plaintiffs had cited to direct testimony from an earlier litigation in

which the company's directors *directly admitted to the falsity of the relevant statements*, as well as interview testimony from a former employee who likewise admitted to the falsity. *Id.* at *11. Plaintiff has not advanced any admissions, or confidential statements, to support its conclusion that Defendants lied about conducting diligence on their tenants. The case law Plaintiff cites refutes Plaintiff's contention that it need not cite a confidential witness, internal documents, or any contemporaneous facts.

Plaintiff's citation to facts suggesting that IIPR's tenants were in financial distress likewise does not create an inference that Defendants had specific undisclosed knowledge. Setting aside that these facts are not actionable because they were known to the market (discussed below), the facts alleged fail to show that Defendants foresaw *any* tenant default. Plaintiff alleges that "as early as 2023" auditors for 4Front, Gold Flora, and Tilt "had substantial concerns about these companies being able to continue as going concerns" and the companies were so "warning their investors." Opp. at 18-19. Indeed, Plaintiff even puts forth tables showing that these tenants had negative working capital going back to 2022:

Financial performance: Net Loss

|  | As of 12/31/22 | As of 12/31/23 | As of 9/30/2024 | As of 12/31/24 |
|---|---|---|---|---|
| 4Front | -$46,898,000 | -$91,647,000 | -$29,723,000 | N/A – Insolvent |
| Gold Flora | -$22,925,000 | -$43,445,000 | -$56,301,000 | N/A – Insolvent |
| Tilt | -$107,466,000 | -$62,399,000 | -$58,254,000 | -$99,679,000 |

Liquidity resources: Negative working capital

|  | As of 12/31/22 | As of 12/31/23 | As of 9/30/2024 | As of 12/31/24 |
|---|---|---|---|---|
| 4Front | -$46,898,000 | -$71,100,000 | -$74,800,000 | N/A – Insolvent |
| Gold Flora | -$33,509,000 | -$34,863,000 | -$64,208,000 | N/A – Insolvent |
| Tilt | -$39,570,000 | -$19,798,000 | -$43,687,000 | -$46,608,000 |

Compl. ¶ 70. But all this shows is that *everyone* knew these tenants were in distress. Plaintiff's conclusion that "Defendants knew or recklessly disregarded that [these tenants] were on the precipice of financial collapse" is flawed because Plaintiff has alleged no facts indicating

*Defendants' Reply Memorandum in Support of Motion to Dismiss*          Page **6** of **17**

Defendants had financial information that was unavailable to the market forecasting a future default. Moreover, Plaintiff's assumption is further undermined by the fact that these tenants ***paid rent*** (and avoided default) through the latter half of 2024.

### 3.    Publicly Known Facts Are Not Actionable.

As discussed above, Plaintiff relies on ***public filings*** by tenants already known by the market. Unfortunately for Plaintiff, this works in Defendants' favor–Plaintiff cannot allege fraud when it had access to the same information. Indeed, the public nature of those facts requires dismissal of Plaintiff's claims. *See Raab v. Gen. Physics Corp.*, 4 F.3d 286, 290 (4th Cir. 1993) (noting that failure to disclose material information may be excused where the information at issue "has been made credibly available to the market by other sources") (citations omitted). "When a plaintiff complains that a defendant failed to disclose a material fact necessary to make its statement not misleading, the concealed information must be information known to the defendants that is not otherwise available to the investing public." *Noble Asset Mgmt. v. Allos Therapeutics, Inc.*, 2005 WL 4161977, at *7 (D. Colo. Oct. 20, 2005). Generally speaking, information "in the public domain" is held to be immaterial in PSLRA cases time and time again. *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *32 (S.D.N.Y. 2012) ("The law in this Circuit is clear that a party 'can be relieved of a duty to disclose when certain developments affecting a corporation become matters of general public knowledge'") (citation modified).

As argued at length in the Memorandum, and not overcome in the Opposition, Plaintiff has not alleged the existence of ***any*** facts that were only known to IIPR that would have made any of its statements false or misleading. Since the same mix of information was available to Defendants as Plaintiff—a sophisticated entity in its own right—and in many cases was available to Plaintiff for many years, Plaintiff cannot credibly allege that Defendants made false or misleading statements because contextualizing information was already available.

*Defendants' Reply Memorandum in Support of Motion to Dismiss*                    Page **7** of **17**

### B.    The Remaining Cases Plaintiff Cites Support Dismissal.

The remaining case law cited by Plaintiff does not help Plaintiff's argument. Rather, it demonstrates how Plaintiff's claim fail, because all are cases in which claims without factual support were dismissed, and only those where the plaintiff had provided factual support survived. *See In re Emergent Biosolutions Inc. Sec. Litig.*, 2023 WL 5671608 (D. Md. Sept. 1, 2023), Opp. at 17 (allowing Section 10(b) claims to survive where Plaintiffs adduced specific facts that FDA and auditors had discovered problems, as well as New York Times reports of known issues with defendants' products); *City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F. Supp. 2d 348, 358 (S.D.N.Y. 2006), Opp. at 17 (denying motion to dismiss as to claims where plaintiffs identified statements from a confidential source as well as later manager admissions, but dismissing others because "[k]nowledge of potential concerns about certain holdings in the portfolio, without more, does not preclude optimistic statements about overall future performance"); *In re Virtu Fin., Inc. Sec. Litig.,* 770 F. Supp. 3d 482, 516 (E.D.N.Y. 2025), Opp. at 17 (dismissing numerous claims where plaintiff failed to "plead facts demonstrating that Defendants made… statements with actual knowledge of their falsity[]" and where "Plaintiff only makes conclusory allegations that 'Defendants knew'"); *Keeney v. Larkin*, 306 F. Supp. 2d 522 (D. Md. 2003), Opp. at 18 (same).

Plaintiff's citation to *Matrixx Initiatives, Inc. v. Siracusano¸* 563 US. 27, 37 (2011) is likewise unpersuasive. This is because Plaintiff's quote—while attributed to the Supreme Court—is actually just a recitation from Rule 10b-5. Opp. at 20. But in the Memorandum, Defendants quote analysis ***in that same case*** in which the Supreme Court said that this rule "do[es] not create [a duty] to disclose any and all material information." *Matrixx,* at 44, Mem. at 20. Accordingly, *Matrixx* does not add to the analysis.

*Defendants' Reply Memorandum in Support of Motion to Dismiss*                    Page **8** of **17**

Plaintiff's cases underscore the Complaint's failings for an additional and distinct reason: in every case Plaintiff cites, the relevant defendants were all charged with having knowledge of specific facts about their *own* businesses, and when the plaintiff could not prove knowledge of such facts about the defendant's own business, the claims were dismissed. Here, however, Plaintiff concludes that Defendants had knowledge of specific facts about *other* businesses (the tenants) yet advances no proof of any such actual knowledge. As discussed above, Plaintiff is charged with the same knowledge as Defendants where the Complaint's allegations rely on public information. *See supra* at p. 7 (citing *Raab*, at 289). This is undoubtedly true as to public information about third parties versus Defendants' business itself. Given this additional distance between Defendants and the facts at issue, Plaintiff's failure to plead any specific facts regarding Defendants' direct knowledge of the detailed goings-on of *other* companies is especially egregious.

## II.    PLAINTIFF FAILS TO OVERCOME NUMEROUS ARGUMENTS.

Plaintiff's Opposition presents inaccurate descriptions or misleading characterizations regarding a number of well-pled arguments advanced in the Memorandum. Multiple times throughout its Opposition, Plaintiff misattributes arguments, quotes to wrong sections of the Complaint, and otherwise continues to press its inaccurate allegations in the hope of surviving dismissal. But creative writing does not save the Complaint.

In the Memorandum, Defendants provide, as Plaintiff puts it, more than 700 pages of exhibits—all of which were necessary to attempt to make sense of Plaintiff's meandering Complaint. Among those exhibits are detailed breakdowns of Plaintiff's misquotes, misinterpretations, and missed warnings. *See* Mem. Exs. 17-19 (Dkt. 60-20 to 60-22). Despite being faced with these statements in black and white, Plaintiff nonetheless announces that the Complaint set out challenged statements "verbatim." Opp. at 19. So too, Plaintiff argues that the dozens of pages in these exhibits show "nothing that Plaintiff actually misquoted." To the contrary,

Exhibit 17 shows Plaintiff selectively quoted statements, failed to provide important contextual elements, or actually quoted *other* documents for propositions it then attributed to other statements.

A glaring example of the "editorial manipulation" Plaintiff denies is found in Plaintiff's argument that "Defendants claim it is an unsupported 'leap of logic' to conclude that Defendants were monitoring all of IIPR's tenants" when "no leap is required." Opp. at 20. The Complaint alleges "Defendants repeatedly told investors that *all* tenants … were subject to … 'Meetings with tenants to talk through operations and financials." *See* Mem at 17, Compl. ¶¶ 61, 75. But the actual statement at issue is that Defendants were monitoring their tenants, and "*in some instances*," met with tenants to discuss more matters. Compl. ¶¶ 60, 89, 168. Monitoring tenants and meeting with all tenants to talk through operations and financials are different statements, and Defendants *never* said the latter. Indeed, the Third Circuit has rejected other plaintiffs' efforts to omit and gloss over this precise "in some instances" phrase. *Handal v. Innovative Indus. Props., Inc.*, 157 F.4th 279, 296 (3d Cir. 2025) (acknowledging that plaintiff's quote "omits three critical words: '*in some instances*'" and affirming dismissal of complaint with prejudice). Plaintiff's double-down on this simply untrue allegation is telling—it has been tried before and rejected.

But even if Defendants *had* said that they met with every tenant and provided specific dates and points of discussion, it still would not make a difference. This is because—unlike the case law requires—Plaintiff has pled nothing to suggest either that such meetings (i) never happened or (ii) that information was obtained that was inconsistent with what the market already knew. Plaintiff's Complaint—and the Opposition—raise questions ("But how could Gold determine what the risk profile actually was as compared to the potential rate of return without the Company doing the due diligence and monitoring necessary to determine that risk?"), but offer no viable factual allegations to meet the PSLRA's pleading standard. Thus, the Complaint must be dismissed.

*Defendants' Reply Memorandum in Support of Motion to Dismiss*                    Page **10** of **17**

III.    **DEFENDANTS CORRECTLY IDENTIFIED NUMEROUS STATEMENTS AS FORWARD-LOOKING.**

Defendants also provide pages of warnings and other cautionary language, which conclusively establish that many of the statements at issue in the Complaint were indeed forward-looking. In response, Plaintiff argues it is *Defendants* who have cherry-picked statements, none of which are forward looking or opinion. The statements Plaintiff argues are factual and retrospective? "We feel very confident in the Illinois market" and "we feel very positive about the **future** resolution for these issues." Compl. ¶ 131, Mem. at 20-21. Plaintiff's argument that these are "present or historical facts" is preposterous. Simply because these statements are in the same document as other historical facts (none of which Plaintiff actually challenges as false) do not make these statements historical or false. Plaintiff fails to adduce any facts to show falsity, which would require facts suggesting that: (1) IIPR did not make an investment in 4Front's Illinois facility; (2) there were no significant delays in construction to 4Front's facility; (3) there was no impact on 4Front's cash flow; (4) Illinois is not a top 5 market in the U.S.; or (5) IIPR is not looking to maximize the value of its portfolio. Thus, Plaintiff's argument fails.

Beyond this issue, Plaintiff simply ignores the entire paragraph—and accompanying multi-page exhibit—in which Defendants show the precise "meaningful cautionary language" Plaintiff argues is missing. Plaintiff instead argues—without actual support—that Defendants were required to provide some sort of specific cautionary language about their tenants' "teetering finances." Opp. at 22. Once again, this is inapposite, as the direct quotation Plaintiff relies upon ("cautionary language 'inadequate to shield defendants from liability for failing to disclose known specific risks'") demands that specific risks be known. Opp. at 22 (quoting *In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d. 511, 531 (S.D.N.Y. 2010)).

*Defendants' Reply Memorandum in Support of Motion to Dismiss*                Page **11** of **17**

Plaintiff's arguments as to puffery suffer similar defects. Relying on *Genworth* and *City of Sterling*, Plaintiff argues that a statement about IIPR "very much lik[ing] the position" of its tenants is pointed and specific. The *Genworth* and *City of Sterling* courts, however, explained that statements of opinion, which include statements of "think" or "believe" are not actionable as a statement of opinion. *See Genworth*, 103 F. Supp. 3d at 778 (explaining that use of "I believe" or "I think" can "transform a statement of fact into opinion") (internal citations omitted).

Plaintiff's entire Complaint—and thus the Opposition—relies on one baseline assumption: that Defendants must have known that their tenants were going to default. Without this critical assumption, the Complaint falls apart, and every case in the Opposition becomes completely inapposite. Repeating an accusation over and over is insufficient. Rather, Plaintiff must *show* the Court facts at least suggesting Defendants knew their tenants would imminently default. Plaintiff does not, because the real argument the Opposition advances is that the tenants did default, therefore Defendants must have known. This is purely "impermissible [pleading] fraud by hindsight." *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 543 F. Supp. 3d 96, 150 (D. Md. 2021) (dismissing claims as "fraud by hindsight" where plaintiffs relied on a later report, but pled "nothing at all about any of the individual Defendants or what they knew at the time the allegedly false or misleading statements were made").

## IV.  PLAINTIFF'S SCIENTER ARGUMENT SIMLARLY FAILS.

Plaintiff's scienter argument is a rehash of its prior arguments, and restatement of the Complaint. According to Plaintiff, because tenants defaulted, and because IIPR conducted diligence on *potential* tenants before signing them to leases, the only possible inference is that Defendants did or should have known about their imminent defaults. But, this is based solely on the facts in the prior sentence: (1) tenants defaulted; and (2) IIPR conducted due diligence. *See*

Opp. at 23-24 ("IIPR stated that it 'rel[ied] on our management team to perform due diligence investigations **of our potential tenants…"** Compl. ¶ 91 (emphasis added)).

Plaintiff unwittingly concedes the issue here, arguing "it is ***plausible*** to infer" one of two options regarding IIPR's alleged scienter. Opp. at 24. One of two options being plausible does not meet the high standard in the Fourth Circuit of "alleg[ing] facts that support a 'strong inference' that *each* defendant acted with at least recklessness in making the false statement." Mem. at 22 (quoting *Tchrs. Ret. Sys. of LA v. Hunter*, 477 F.3d 162, 184 (4th Cir. 2007)). Plaintiff argues in passing that the possibility a landlord can have tenants who default "is certainly not ***more*** compelling" than a nefarious plot between a company and its managers.

Plaintiff instead argues it proved scienter by recasting a statement that IIPR was monitoring its tenants to mean they "possessed knowledge of the true state of affairs" of those tenants. Opp. at 26 (quoting *James River*, at \*19). But the *James River* defendants said they did a deep dive into their company's finances "every single quarter," and then the plaintiff adduced facts and testimony that no such deep dive had occurred—alleging that the company and its managers actually had access to information (because it was their company) that would contradict their representations. Here, Plaintiff argues that Defendants *must* have had IIPR's tenant's information—but alleges no facts. In other words, Plaintiff has not actually argued that any statement by any Defendant regarding a "deep dive" or conducting diligence was in fact false or misleading. Plaintiff has not provided any information to suggest that there was (i) no deep dive, (ii) no diligence, or (iii) no meetings. Instead, Plaintiff *argues* that there is no way Defendants could have ever done diligence because the tenants defaulted. The Court is not required to accept this argument as fact, and it is certainly not required to take conclusory argument as fact. Moreover, to do so would erroneously allow the long-rejected technique of pleading fraud by hind-sight.

This tactic is most egregious in footnote 17, where Plaintiff states as absolute fact that Defendants "had the specific tenant financial information that would have alerted them of the risk." Opp. at 26, n.17. But no fact was pled to support this statement. Plaintiff's protestations prove unequivocally that it indeed "stack[s] inference upon inference"—assuming (a) that because two of IIPR's leases had a specific provision (including one from 2019) all leases must have had that provision, (b) that the tenants actually provided documents under that lease term, and (c) that information showed more than what the market knew. Plaintiff presents all of these assumptions as fact. This fails to meet the pleading standards. *See also supra* at p.7 (*Raab*).

Finally, Plaintiff fails to rebut Defendants' argument about a lack of motive. Plaintiff does not argue that Defendants saw additional investments, additional income, or otherwise received any benefit whatsoever from any purported fraud or delay. Nor does Plaintiff argue it would have even been possible for IIPR's stock price to hit the levels necessary for a payout. Just because Plaintiff—and IIPR—lost money on a risky proposition does not point to fraud.

## V.      THE OPPOSITION UNDERSCORES THE PROLIXITY OF THE COMPLAINT.

Plaintiff incorrectly argues that Defendants' prolixity argument "rests on a misreading of the Complaint," because Rule 8 is proper when complaints are confusing and hard to understand. Opp. at 28-29. Defendants' prolixity argument is not based on the Complaint's length. Rather, Defendants identified cases where this Court dismissed *far* shorter complaints due to their repetitive and conclusory nature. *See* Mem. at 12. That Defendants had to seek, analyze, and append "over 700 pages of exhibits" in an attempt to understand what Plaintiff was actually trying to convey proves Defendants' point further. Defendants admit in the Memorandum that they consented to a longer Complaint—but that does not give Plaintiff *carte blanche* to submit a redundant, confusing, and meandering pleading that leaves the reader scratching their head about relevant facts and allegations. Even if the Complaint was half as long, it would still suffer from

these same deficiencies, and would merit dismissal for prolixity. *See* Mem. at 12 (citing *Plumhoff v. Cent. Mortg. Co.*, 286 F. Supp. 3d 699, 702 (D. Md. 2017)).

Plaintiff's threadbare argument regarding group pleading is likewise unavailing. The Complaint does not detail facts specified to each individual defendant.[2] Plaintiff responds to this noted deficiency by citing to three paragraphs of the Complaint that identify three individual Defendants as responsible for specific statements. The rest of the Complaint—namely paragraphs 1 through 278, which are incorporated by reference into Plaintiff's two-paragraph-long Count II— go completely unaddressed. This is not enough and neither is Plaintiff's conclusory, blanket statement that every Defendant is liable for every statement made because each could "control public statements about IIPR." Opp. at 29. Plaintiff's group pleading warrants dismissal.

Plaintiff's attempt to cure its "control person liability" pleading deficiencies is also insufficient. Plaintiff cites to 10 paragraphs from its Complaint that contain references to slides identifying individual Defendants as "senior management." Plaintiff then (a) assumes that such identified Defendants prepared those slides (Compl. ¶ 98) or (b) reiterates the same rote (and often conclusory) allegations that an individual had a "role as a manager" and management played a role in overseeing tenants. And from there, Plaintiff concludes that "the most compelling inference" was direct knowledge of falsity (*id*. 105, 108, 116, 151, 182, 200, 215). These boilerplate and unsupported allegations will not prop up a Section 20(a) claim. Count II should be dismissed.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

---

[2] *See* Mem. at 9 (citing *In re Mut. Funds., Inv. Litig.*, 437 F. Supp. 2d 444, 446 (D. Md. 2006)).

*Defendants' Reply Memorandum in Support of Motion to Dismiss*    Page **15** of **17**

Dated:  November 20, 2025                    Respectfully submitted,


*/s/ Jarren N. Ginsburg*
Jarren N. Ginsburg
FOLEY & LARDNER LLP
Washington Harbour
3000 K Street, N.W.
Suite 600
Washington, D.C. 20007-5109
202.295.4071
Facsimile: 202.672.5399
jginsburg@foley.com

Todd A. Murray (admitted *pro hac vice*)
Andrew A. Howell (admitted *pro hac vice*)
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201-3340
214.999.4862
tmurray@foley.com
ahowell@foley.com


*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of November, 2025, a true and correct copy of the above and foregoing DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS LEAD PLAINTIFF'S CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS was filed and served *via* CM/ECF upon all counsel of record.

*/s/ Jarren N. Ginsburg*
Jarren N. Ginsburg